436 A.2d 607

**COMMONWEALTH of Pennsylvania,**

v.

**Harold L. SCOTT, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1981.

Decided Nov. 5, 1981.

Paul D. Boas, Berlin, Boas, Isaacson & Logan, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Appellant Harold L. Scott was originally convicted of murder of the first degree and a violation of the Uniform Firearms Act. Post-verdict motions were denied and appellant was sentenced to life imprisonment with a concurrent prison term of two and one-half to five years for the firearms violation. On direct appeal, this Court reversed and granted appellant a new trial because the trial court erred in refusing to admit evidence concerning prior racial incidents in the neighborhood. *Commonwealth v. Scott*, 480 Pa. 50, 389 A.2d 79 (1978).

On retrial, which is the subject matter of this appeal, appellant was convicted of murder of the third degree and a violation of the Uniform Firearms Act. Post-verdict motions again were denied and appellant was sentenced to a prison term of ten to twenty years with a consecutive prison term of one and one-half to five years for the firearms violation. This appeal followed.

The facts are set out in detail in our opinion following appellant's direct appeal from the original trial. For our purposes here it is sufficient to note that appellant, a black man, shot a white victim following a racial incident. The Commonwealth's witnesses, friends of the victim, testified that appellant had not been provoked. Appellant has claimed that he acted in self-defense.

Appellant argues that the evidence was insufficient to sustain his conviction for violating the Uniform Firearms Act. Appellant was convicted of violating 18 Pa.C.S.A. § 6106, which provides:

"No person shall carry a firearm in any vehicle *or concealed on or about his person*, except in his place of abode or fixed place of business, without a license..."

Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C. S.A. § 6106. Appellant claims that since the Commonwealth offered no proof of concealment, the evidence was insufficient to sustain this conviction.

In *Commonwealth v. Butler*, 189 Pa.Super. 399, 403, 150 A.2d 172, 173 (1959), the Court stated:

" . . . The issue of concealment depends on the particular circumstances present in each case, and is a question for the trier of fact."

Two Commonwealth witnesses testified that they saw appellant pull from his waistband something that looked like a gun. Appellant, on the other hand, testified that he approached the group with his gun in his hand, making no attempt to conceal the weapon. Resolving questions of credibility is a function of the trier of fact and apparently the jury chose to believe the Commonwealth witnesses and disbelieve appellant. Further, the testimony of the two Commonwealth witnesses referred to above is sufficient to sustain the jury's conclusion that appellant had, in fact, concealed the weapon. *Accord: Commonwealth v. Horshaw*, 237 Pa.Super. 76, 346 A.2d 340 (1975). Appellant's argument is thus without merit.

Appellant also argues that the trial court erred in ruling that proposed defense witnesses, who intended to testify that appellant had a good reputation for honesty and peacefulness, could be cross-examined about appellant's two prior arrests, neither of which had led to a conviction. The facts are as follows.

Near the end of the Commonwealth's case-in-chief appellant's attorney informed both the court and the prosecutor, outside of the jury's presence, that as part of appellant's defense he intended to call various witnesses who would testify that appellant had a reputation for being honest and peaceful in the community. Appellant's attorney then asked the trial court to rule preliminarily that the prosecution be prohibited from asking the proposed witnesses on cross-examination if they had heard people in the community mention that appellant had, on two prior occasions, been arrested and charged with assaulting his wife and illegally possessing a firearm. Although neither of the arrests resulted in a conviction, the court denied appellant's request. Because of

the court's ruling, appellant's trial counsel announced he would not call the proposed witnesses.

This Court has stated:

"It is a well established general rule that evidence of a criminal defendant's prior arrests is inadmissible as tending to prove his disposition to commit crimes generally, or his commission of the specific crime for which he is then standing trial. See 3A Wigmore on Evidence, § 980a (Rev. Third Ed., 1970); American Law Institute, Model Code of Evidence, Rule 306 (1942). Wigmore has adequately summarized the purpose of this rule: '. . . a mere arrest or indictment will not be allowed to be inquired after, since the fact of arrest or indictment is quite consistent with innocence, and since the reception of such evidence is merely the reception of somebody's hearsay assertion as to . . . guilt. To admit this would involve a violation both of the hearsay rule and of the rule forbidding extrinsic testimony of misconduct.' 3A Wigmore on Evidence, § 980a (Rev. Third Ed., 1970). When, however, the defendant introduces evidence of his own good character, as was done in the instant case, the Commonwealth is permitted to cross-examine the character witnesses 'as to whether or not they ever heard *persons in the neighborhood* attribute particular offenses to the defendant.' *Commonwealth v. Jenkins*, 413 Pa. 606, 607–08, 198 A.2d 497, 498 (1964). (Emphasis in original.)

"Such cross-examination is allowed for the purpose of testing the accuracy of the character witness' testimony to determine whether he is indeed thoroughly familiar with the defendant's reputation in the community. *Commonwealth v. Becker*, 326 Pa. 105, 191 A. 351 (1937); *Commonwealth v. Thomas*, 282 Pa. 20, 127 Atl. 427 (1925). Under this exception to the general rule the prosecution has been permitted to question a character witness as to a prior arrest, whether or not it culminated in an indictment, trial or conviction. *Michelson v. United States*, 335 U.S. 469 [69 S.Ct. 213], 93 L.Ed. 168 (1948); *Commonwealth v. Amos*, 445 Pa. 297, 300, 284 A.2d 748 (1971)."

*Commonwealth v. Little*, 449 Pa. 28, 30–31, 295 A.2d 287, 289 (1972). Appellant specifically asks, however, that we over-rule prior case law to the extent that it allowed cross-examination of character witnesses concerning arrests which did not result in convictions.

■ The entire area of the law concerning character witnesses is generally recognized as somewhat of a paradox. As Professor McCormick has stated:

"By a rule of relatively recent origin and doubtful expediency, the only way in which character . . . can be proved is by evidence of reputation. This excludes evidence of specific acts or blameless life and rules out opinion evidence as to the character of the accused for the trait in question based on the witness' knowledge and observation. Reputation evidence, though muted and colorless, is thought to have the advantage of avoiding distracting side issues as to particular acts and incidents in the past life of the accused. The same advantage is, however, also possessed by opinions and exclusion of this latter type of convincing evidence is difficult to justify."

McCormick on Evidence, § 191, at 455–56 (2d Ed., 1972) (footnotes omitted). Character witnesses, like any other witnesses, can be subjected to cross-examination and it is the scope of the cross-examination that has been a troublesome area for courts, commentators and the profession.

A vast majority of jurisdictions allow inquiry into past arrests, even if not resulting in convictions, for the reason set forth in *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

"Arrest without more may nevertheless impair or cloud one's reputation. False arrest may do that. Even to be acquitted may damage one's good name if the community receives the verdict with a wink and chooses to remember the defendant as one who ought to have been convicted. A conviction, on the other hand, may be accepted as a misfortune or an injustice, and even enhance the standing of one who mends his ways and lives it down. Reputation is the net balance of so many debits and credits that the

law does not attach the finality to a conviction, when the issue is reputation, that is given to it when the issue is the credibility of the convict.

"The inquiry as to an arrest is permissible also because the prosecution has a right to test the qualifications of the witness to bespeak the community opinion. If one never heard the speculations and rumours in which even one's friends indulge upon his arrest the jury may doubt whether he is capable of giving any very reliable conclusions as to his reputation."

*Id.* at 482–83, 69 S.Ct. at 221–22. In these jurisdictions, the inquiry is generally limited to questions in the form, "Have you heard that the defendant was arrested?" *Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971). Further, where such questioning is permitted, a cautionary instruction must be given informing the jury of the very limited purpose of such evidence, i. e., to refute the evidence of good character and not as substantive evidence of guilt. The Commonwealth thus argues that such questioning must be allowed to subject the defendant's proof of reputation for good character "to tests of credibility designed to prevent him from profiting by a mere parade of partisans." *Michelson v. United States, supra,* at 479, 69 S.Ct. at 220.

A minority of the jurisdictions at the opposite end of the spectrum forbid any questioning concerning specific incidents of misconduct. Mr. Justice Rutledge, in his dissent in *Michelson,* represented this minority view.

"My own preference and, I think, the only fair rule would be to foreclose the entire line of inquiry concerning specific incidents in the defendant's past, both on cross-examination and on new evidence in rebuttal. This would leave room for proper rebuttal without turning the defendant's trial for a specific offense into one for all his previous misconduct, criminal or other, and would put the prosecution on the same plane with the defendant in relation to the use of character evidence."

*Id.* at 496, 69 S.Ct. at 228 (Dissenting Opinion). At least three states forbid any questioning concerning specific inci-

dents of misconduct. *State v. Williams*, 111 Ariz. 511, 533 P.2d 1146 (1975); *State v. Robinson*, 226 N.C. 95, 36 S.E.2d 655 (1946); *People v. Page*, 365 Ill. 524, 6 N.E.2d 845 (1937). As the Arizona Supreme Court has held, cross-examination of character witnesses should be limited

> "To questions as to the source from which the witness has obtained his knowledge of the reputation of the defendant, and, when he states those sources, permitting questions as to what he has heard therefrom regarding such reputation."

*Viliborghi v. State*, 45 Ariz. 275, 286, 43 P.2d 210, 215 (1935). The prosecution, of course, can always call, on rebuttal, its own witnesses who could testify concerning the defendant's bad reputation for the traits raised by defendant's character witnesses.

 Instantly, appellant argues, and quite convincingly in our view, that his proposed evidence concerning his reputation for being honest and peaceful was essential to his defense.[1] As appellant states in his brief:

> "In the instant case the appellant, a black man, was accused of killing a white man without provocation and with racial overtones. The friends of the victim who were involved in chasing some young blacks and fighting with them prior to the shooting so testified. The appellant, who testified, his wife and a neighbor seriously and critically disputed the facts as presented by the Commonwealth witnesses. Appellant claimed that he killed in self defense.

> "In other words, the fate of the appellant rose or fell with his credibility and the impression that the jury formed of him—was he an honest and believable person, and in addition, was he a peaceful person. Had the jury put more credence in *either* of these traits—honesty *or*

---

1. A defendant is entitled to a charge that character evidence alone may be sufficient to raise a reasonable doubt and thus justify an acquittal of the charges. *Commonwealth v. Cleary*, 148 Pa. 26, 23 A. 1110 (1892); *Commonwealth v. Shapiro*, 223 Pa.Super. 15, 297 A.2d 161 (1972).

peacefulness (not necessarily both—a verdict of something less than third degree murder might have resulted)." (Appellant's brief at 13–14). Appellant, however, chose not to introduce the evidence because of the trial court's ruling refusing to limit the Commonwealth's cross-examination. We agree that appellant did not receive a fair trial and therefore is entitled to a new trial.

Even a proponent of the rule allowing cross-examination concerning arrests which have not resulted in convictions has stated:

"We concur in the general opinion of courts, textwriters and the profession that much of this law is archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counterprivilege to the other. But somehow it has proved a workable even if clumsy system when moderated by discretionary controls in the hands of a wise and strong trial court. To pull one misshapen stone out of the grotesque structure is more likely simply to upset its present balance between adverse interests than to establish a rational edifice."

*Michelson v. United States, supra* at 486, 69 S.Ct. at 223. We believe, however, that when that one misshapen stone is so prejudicial to an accused that the prejudicial effect greatly outweighs the limited probative value, that stone must be removed.

"The rule permitting the cross-examiner to ask the character witness whether he 'has heard' ... of other particular crimes of accused involving the same trait is pregnant with possibilities of destructive prejudice."

McCormick on Evidence, § 191, at 451 (2d Ed. 1972).

Under this rule which we abrogate, the cross-examination must have pertained to arrests which relate to the character trait vouched for on direct. McCormick on Evidence, § 191, n. 14 (2d Ed. 1972). Thus, the Commonwealth would have been permitted to ask appellant's character witnesses if they had heard that appellant had been arrested for assaulting his wife and on a weapons charge. Despite any cautionary

instruction the court may have given the jury, the undue prejudice to appellant is obvious. On one hand, the jury would have heard that appellant had a reputation for being peaceful while on the other hand, the jury would also have heard that appellant had been arrested on two charges. Had appellant been convicted of the charges, it would be easier to say that he must suffer the consequences of placing his character at issue. But instantly, the arrests which would have been alluded to never resulted in convictions.[2] Since an arrest is equally consistent with either guilt or innocence, the cases allowing such cross-examination are overruled.

Judgment of sentence is reversed and case remanded for a new trial.

2. In *Commonwealth v. Summers*, 269 Pa.Super. 437, 410 A.2d 336 (1979), the Superior Court held that a defendant could show that the charges had been dismissed. We believe the Commonwealth would then have to be allowed to offer evidence as to why the charges had been dismissed. Rather than allowing inquiry into areas which are far afield from the question of a defendant's guilt or innocence on the charge for which he is standing trial, we believe a better solution is simply to forbid such cross-examination.