736 A.2d 552

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Tony ARDESTANI, Appellant.**

**Commonwealth of Pennsylvania, Appellee,**

v.

**Joseph H. Metts, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 15, 1997.

Decided June 29, 1999.

Kevin G. Sasinoski, Pittsburgh, Suzanne M. Swan, Bethel Park, for Tony Ardestani.

Robert E. Colville, Michael W. Streily, Pittsburgh, for Com. in No. 0002 W.D. Appeal Docket 1997.

Jack W. Connor, Uniontown, for Joseph H. Metts.

Peter U. Hook, Uniontown, Robert A. Graci, Harrisburg, for Com. in No. 0036 W.D. Appeal Docket 1996.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

194

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

ZAPPALA, Justice.

On December 30, 1994, our Court held in *Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287 (1994), that Article I, Section 8 of the Pennsylvania Constitution precludes the police from sending an informant into the home of an individual to electronically record his conversations absent a prior determination of probable cause by a neutral, judicial authority. Allocatur was granted in the instant consolidated cases to determine the applicability of our decision in *Brion*. We hold that because the appellants raised and properly preserved the same issue decided in *Brion* at all stages of the adjudication, and their cases were pending on direct appeal at the time *Brion* was decided, they are entitled to the benefit of the decision. Accordingly, we reverse the orders of the Superior Court which affirmed the appellants' convictions.

The record establishes that Appellant Tony Ardestani solicited individuals to murder his wife. Following an acrimonious separation in June of 1991, Ardestani approached Richard Vecchiola and inquired whether he knew anyone who would kill his wife for $10,000. Approximately one year later, Vecchiola suggested that Ardestani meet Otis Winstead. While en route to Ardestani's home on July 2, 1992, Winstead saw Detective Elizabeth Hoover and informed her of Ardestani's plan to have his wife killed. Hoover accompanied Winstead to Ardestani's residence, but he was not home. Winstead thereafter met with Ardestani to discuss the murder. Later that month, Winstead again met with Ardestani and portrayed Hoover as his partner. At that meeting, payment arrangements and specific plans to carry out the killing were discussed.

On July 22, 1992, with authorization from a Deputy Assistant District Attorney, Hoover was fitted with a body wire and accompanied Winstead to Ardestani's apartment. Winstead asked Ardestani whether he wanted his wife killed that weekend, and he replied, "Yeah, I guess." He then gave Hoover

and Winstead a description of the victim and directions to her home. As Ardestani and Hoover passed each other in a narrow doorway, Ardestani placed his hand on Hoover's waist and felt the body wire. Hoover then placed Ardestani under arrest.

Ardestani filed a motion to suppress the recordings, alleging that the warrantless wiretap interceptions of his conversations violated Article I, Section 8 of the Pennsylvania Constitution. The trial court denied the motion and a recording of the taped conversation was played for the jury at trial. Ardestani was thereafter convicted of criminal solicitation. The common pleas court denied post-trial motions challenging the constitutionality of the intercepted conversations and sentenced Ardestani to three to ten years imprisonment.

The Superior Court affirmed the judgment of sentence, holding, *inter alia*, that the warrantless wire interception in Ardestani's home did not violate Article I, Section 8. While Ardestani's Petition for Allowance of Appeal was pending before our Court, we decided *Brion*. On March 2, 1995, we granted allocatur and remanded the case to Superior Court for reconsideration in light of *Brion*. On remand, Superior Court again affirmed the judgment of sentence, concluding that *Brion* was not to be retroactively applied based on its *en banc* decision in *Commonwealth v. Metts*, 447 Pa.Super. 275, 669 A.2d 346 (1995), *appeal granted*, 544 Pa. 255, 675 A.2d 1238 (1996). Our Court again granted allocatur and directed that this case be consolidated with *Metts*.

Appellant Joseph Metts was charged with the first degree murder of Piper Newland, a corrections officer at the Fayette County Prison. In the early morning hours on January 5, 1992, Metts awakened his sister, Wendy Sue Kulenovic, and confessed to shooting a guard at the jail.[1] Kulenovic observed a gun and a purse containing the victim's pay stubs on her kitchen table. She recognized the gun as belonging to Paul Kuba, a friend of Metts. Metts then removed a fifty-dollar bill from the purse and stated, "I shot her for a lousy fifty

---

1. Kulenovic's husband Dwayne was also charged with the murder and was Metts's co-defendant at trial.

dollars." Metts later told Kuba that he had shot Newland for the money.

On January 27, 1992, and February 6, 1992, with authorization from the Fayette County District Attorney, Kuba wore an electronic transmitter while questioning Metts about his involvement in the murder. During one of the recorded conversations, Metts confessed to shooting the victim for fifty dollars. The conversations were recorded in the home of Wendy Kulenovic, where Metts had been staying for several days prior to the murder.

Metts filed a motion to suppress the recordings on the ground that they violated Article I, Section 8 of the Pennsylvania Constitution. The common pleas court denied suppression and the tapes were played for the jury.[2] Metts was subsequently convicted of first degree murder, robbery and related theft offenses. He received a life sentence on the murder charge and a consecutive sentence of ten to twenty years for his robbery conviction.

While Metts's appeal to the Superior Court was pending, our Court decided *Brion*. The Superior Court affirmed Metts's convictions, holding that *Brion* was inapplicable to intercepted conversations that occurred prior to December 30, 1994, the date *Brion* was decided. Our Court subsequently granted allocatur, limited to the question of whether *Brion* is applicable to Metts's case, and ordered that the appeal be held pending our disposition of a similarly situated case, *Commonwealth v. Selby*, 547 Pa. 31, 688 A.2d 698 (1997).

The issue of whether *Brion* applies to the instant cases is controlled by our decision in *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983). In *Cabeza*, the defendant's appeal was pending in Superior Court at the time we decided *Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607 (1981), where we abandoned the rule permitting prosecutors to introduce prior arrests of the accused on cross-examination of

---

**2.** At trial, the court reporter indicated that the tape was inaudible. The trial court agreed and a court-commissioned reporter prepared a transcript that was admitted into evidence. According to the transcript, Metts stated, "I shot her for the cash" and "I got fifty bucks off her."

character witnesses. As the prosecutor in *Cabeza* had introduced the defendant's prior arrests to impeach his character witnesses, the Superior Court relied upon *Scott* and reversed the judgment of sentence.

The Commonwealth appealed, contending that *Scott* should not be applied because the law in effect at the time of trial sanctioned the prosecutor's line of questioning and the evidentiary rule established in *Scott* was not of constitutional dimension. We rejected the Commonwealth's argument, and stated:

> The only noteworthy difference between *Scott* and [*Cabeza*] is that *Scott* was argued and decided first. The instant case may well have been the case which overruled prior law if *Scott* had not been decided while [Cabeza's] appeal to the Superior Court was pending. The question whether to apply an enlightened rule in favor of a discredited one should not be determined by the fortuity of who first has his case decided by an appellate court.

> Therefore, we hold that where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the rule to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

503 Pa. at 232–233, 469 A.2d at 148.

Here, *Brion* overruled prior law which sanctioned the warrantless wire interception of an accused's conversation in his home. Our decision in *Brion* did not specifically declare that the new rule was to be prospective only. Accordingly, the *Brion* rule applies to all cases on direct appeal where the issue in question was properly preserved at all stages of the adjudication. See *Commonwealth v. Brown*, 494 Pa. 380, 431 A.2d 905 (1981) (fairness demands that relief be granted not only in case which successfully contests a rule of law, but also in cases on direct appeal which suffer same infirmity); *McHugh v. Litvin*, 525 Pa. 1, 574 A.2d 1040 (1990) (changes in the law are applied to cases in the system at the time the change is announced).

We reached the same conclusion in *Commonwealth v. Selby,* 547 Pa. 31, 688 A.2d 698 (1997), which also involved the application of *Brion.*[3] We granted allocatur in *Selby,* but held disposition of the case pending *Brion.* In rejecting the Commonwealth's contention that *Brion* should not be applied, we noted that the fact that we held the case pending the outcome of *Brion* indicated that we expected the case to be controlled by *Brion.* We stated:

> Considered in the light of the *Cabeza* rule, the illogic of holding this case pending *Brion* and then reaching the opposite result in an analytically indistinguishable situation defies explanation.

547 Pa. at 34, 688 A.2d at 700.

■ Having determined that *Brion* applies, we must next examine whether the application of that decision to the instant cases warrants suppression of the intercepted conversations.[4] In *Brion,* we held that "an individual can reasonably expect that his right to privacy will not be violated in his home through the use of any electronic surveillance." *Id.* at 261, 652 A.2d at 289. We concluded that because the conversations were intercepted in the defendant's home and there was no probable cause determination by a neutral judicial authority, the recordings violated Article I, Section 8 of the Pennsylvania Constitution and must be suppressed. The facts of Appellant Ardestani's case are virtually indistinguishable. The conversations in which Ardestani implicated himself in the criminal solicitation were recorded in his home without a determination of probable cause by a neutral judicial authority. Accordingly, the tapes should have been suppressed.

■ In Appellant Metts's case, the conversations were not recorded in Metts's home, but rather were intercepted in the home of his sister, Wendy Kulenovic. Notwithstanding this

3. We recognize that *Selby* was a plurality opinion. Although not controlling, it is instructive regarding the applicability of *Brion* to the instant cases.

4. As noted, both appellants raised and properly preserved the issue challenging the admissibility of the intercepted conversations pursuant to Article I, Section 8 of the Pennsylvania Constitution.

fact, we find that our decision in *Brion* controls. We have held that an individual need not possess a property right in the place invaded to invoke constitutional protections; rather he must only possess a legitimate expectation of privacy in the area searched. *Commonwealth v. Brundidge*, 533 Pa. 167, 173, 620 A.2d 1115, 1118 (1993). An expectation of privacy is present when the individual's conduct exhibits an actual expectation of privacy which is recognized by society as reasonable. *Id.*

The record establishes that Metts did not maintain a permanent residence and had been staying at Kulenovic's home with her permission for several days prior to the murder.[5] These facts establish that Metts possessed a reasonable expectation of privacy in his sister's home which society would recognize as reasonable. *See Commonwealth v. Rowe*, 433 Pa. 14, 249 A.2d 911 (1969) (defendant had reasonable expectation of privacy in home of co-defendant's father); *Commonwealth v. Evans*, 488 Pa. 38, 43, 410 A.2d 1213, 1215 (1979) (overnight guest had legitimate expectation of privacy when staying at residence with the host's permission); *Commonwealth v. Brundidge*, 533 Pa. at 173, 620 A.2d at 1118 (guest in motel room has legitimate expectation of privacy in room during period of time it is rented). *Commonwealth v. Rodriguez*, 451 Pa.Super. 474, 679 A.2d 1320 (1996), *alloc. denied*, 550 Pa. 681, 704 A.2d 637 (1997) (defendant had legitimate expectation of privacy in sister's home).

Accordingly, Metts is entitled to the protections of Article I, Section 8 as espoused in *Brion*. Because there was no prior determination of probable cause by a neutral judicial authority, the recordings of Metts's conversations in his sister's home should have been suppressed.

Finally, we address the Commonwealth's contentions that even if *Brion* applies, the admission of the tape-recorded

---

5. Kulenovic testified that she asked Metts to leave her apartment on the day following the murder because she did not want his girlfriend, a runaway, to stay with him. Metts left the apartment on the day after the murder, but returned to spend the night at his sister's apartment several times prior to his arrest.

conversations amounts to harmless error. It is well established that an error is harmless only if the appellate court is convinced beyond a reasonable doubt that there is no reasonable possibility that the error could have contributed to the verdict. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). The Commonwealth bears the burden of establishing the harmlessness of the error. *Id.* This burden is satisfied when the Commonwealth is able to show: (1) the error did not prejudice the defendant or the prejudice was *de minimis;* or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial affect of the error so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Mayhue*, 536 Pa. 271, 296, 639 A.2d 421, 433 (1994); *Commonwealth v. Williams*, 524 Pa. 404, 409, 573 A.2d 536, 538–39 (1990). The Commonwealth has failed to meet this burden in each of the instant cases.

■ In Appellant Ardestani's case, the Commonwealth relies on the third type of harmless error and contends that because Ardestani voiced his desire to have his wife killed to numerous witnesses, there was overwhelming evidence of his guilt absent the taped conversation. This argument fails, as the evidence in support of conviction was not uncontradicted. Ardestani testified at trial that he never encouraged or requested Detective Hoover or Otis Winstead to kill his wife and that he never expressed a desire to have her killed.[6]

■ In Appellant Metts's case, the Commonwealth contends that the admission of the taped confession was harmless because the tape was merely cumulative of other properly admitted, substantially similar evidence. We disagree. As the United States Supreme Court eloquently stated in *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991):

6. Likewise, Metts testified that although he could not remember the time surrounding the shooting, he denied shooting the victim for her money or for any other reason.

A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.... The admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so

*Id.* at 296, 111 S.Ct. at 1257 (citations omitted).

The Court emphasized that reviewing courts should exercise extreme caution before determining that the admission of the confession at trial was harmless. *Id.* With this in mind, we hold that it is virtually impossible to conclude beyond a reasonable doubt that the jury would have reached the same conclusion absent the erroneous introduction of the appellants' taped incriminating statements. The prejudice arising from the jury hearing the most inculpatory declarations from the mouth of the defendant himself cannot be described as insignificant or *de minimis*.[7] In fact, it may be the linchpin securing the jury's ultimate verdict. Thus, the admission of the recordings cannot be deemed harmless error. *See Commonwealth v. Bullard,* 465 Pa. 341, 349–50, 350 A.2d 797, 801 (1976) (because confession is most damning of all evidence, erroneous admission of confession not harmless error); *Commonwealth v. Katze,* 540 Pa. 416, 658 A.2d 345 (1995) (Zappala, J., Opinion in Support of Reversal) (violation of Wiretap Act cannot constitute harmless error).

Accordingly we reverse the orders entered by the Superior Court in both *Ardestani* and *Metts* and remand for new trials.[8]

---

**7.** We recognize that the taped confession in *Metts* was virtually inaudible. This does not however, eliminate the prejudice arising from the translation of the tape by the court commissioned reporter.

**8.** Both the concurring and dissenting opinions entertain a lengthy analysis regarding the appropriate factors to consider in determining whether to apply *Brion* to the instant cases. I find such analysis unnecessary as our holding in *Cabeza* has never been overruled and continues to be the most prudent approach to follow in the criminal arena.

Justice SAYLOR did not participate in the consideration or decision of *Commonwealth v. Ardestani,* No. 2 W.D. Appeal Docket 1997.

Justice NIGRO files a concurring opinion.

Justice CASTILLE files a dissenting opinion in which Justice NEWMAN joins.

NIGRO, Justice, concurring.

I agree with the majority that Appellants are entitled to the retroactive application of this Court's holding in *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994), under the general rule of retroactivity outlined in *Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983).[1] However, I write separately to note that, under current Pennsylvania law, the question of whether *Brion* should be retroactively applied to the instant cases does not end with an analysis under *Cabeza.*

Although *Cabeza* holds that retroactivity is the general rule, this Court has observed that a sweeping rule of retroactive application is not universally justified. *Blackwell v. Commonwealth,* 527 Pa. 172, 589 A.2d 1094 (1991). In *Blackwell,* this Court reaffirmed *Cabeza*'s general rule of retroactivity but observed that the decision of whether to apply a new rule retroactively or prospectively is a function of judicial discretion informed by three considerations: (1) the purpose to be served by the new rule; (2) the extent of the reliance by law enforcement authorities on the old standard; and (3) the effect on the administration of justice by the retroactive application of the new standard. *Id.* at 182–83, 589 A.2d at 1099 (citing *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)). The majority finds that this tripartite

---

1. As the majority notes, this Court described the general rule of retroactivity in *Cabeza* as follows:

    where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the question is properly preserved at all stages of adjudication up to and including any direct appeal.

    *Cabeza,* 503 Pa. at 233, 469 A.2d at 148.

retroactivity analysis is "unnecessary as our holding in *Cabeza* has never been overruled and continues to be the most prudent approach to follow in the criminal arena." While this statement may be true, it does not negate the fact that Pennsylvania cases, including those in the criminal arena, have continued to apply this tripartite analysis to questions of retroactivity in the wake of *Cabeza*. *See, e.g., Commonwealth v. Melilli*, 521 Pa. 405, 414, 555 A.2d 1254, 1259 (1989) (decision holding that Article I, Section 8 requires search warrant prior to use of pen registers is to be applied retroactively under both *Cabeza* and tripartite retroactivity analysis); *Commonwealth v. McFeely*, 509 Pa. 394, 400, 502 A.2d 167, 170 (1985); *Commonwealth v. Tizer*, 454 Pa.Super. 1, 684 A.2d 597, 601–03 (1996); *see also Blackwell*, 527 Pa. at 183 n. 6, 589 A.2d at 1099 n. 6 (although *Desist v. United States, supra* involved a criminal prosecution, the criteria applied in resolving the question of retroactive or prospective application of a new rule is no different in civil litigation). Thus, contrary to the position of the majority, I believe current Pennsylvania law mandates that this tripartite analysis be considered when determining whether a decision announcing a new rule should be granted retroactive effect.[2]

When applied to the instant cases, however, I do not believe that the three factors of the *Blackwell* retroactivity analysis militate in favor of granting *Brion* prospective effect only.

---

**2.** I also question the wisdom of conducting this tripartite analysis when the issue involves the limited retroactive application of a new criminal rule of constitutional proportion only to those cases pending on direct appeal at the time of the decision. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (re-examining retroactivity analysis and holding that, to be consistent with norms of constitutional adjudication, decisions announcing new constitutional rules for conduct in criminal prosecution are to be applied retroactively to all cases pending on direct appeal). This Court, however, is not bound by the United States Supreme Court's decisions on the retroactivity of a new federal constitutional rule and under Pennsylvania law, as it now stands, the *Blackwell* analysis must be applied to resolve claims of retroactivity. *See Blackwell*, 527 Pa. at 181, 589 A.2d at 1098 (question of whether a state court decision announcing a new rule of law is to be applied retroactively or prospectively is squarely within province of state courts).

First, I believe that the purpose of the *Brion* rule runs in favor of retroactively applying *Brion* to the instant cases. Although the Pennsylvania Constitution does not prohibit prospective effect for decisions expounding new constitutional rules, it is nonetheless significant that the decision in *Brion* involves a fundamental issue of constitutional dimensions. *See Blackwell*, 527 Pa. at 187, 589 A.2d at 1101 (fact that decision involves fundamental issue of constitutional dimensions distinguishes it from cases granting prospective effect to decisions with no constitutional implications); *Commonwealth v. Minarik*, 493 Pa. 573, 579, 427 A.2d 623, 626 (1981) (new rules of criminal procedure do not generally apply retroactively when the circumstance motivating a new rule is not one of constitutional proportion). The purpose of the rule in *Brion*, which requires judicial authorization prior to police use of wire interceptions in the home of a non-consenting individual, is to safeguard the important state constitutional right against unreasonable searches and seizures and to protect citizens' heightened right to privacy in their homes. *See Commonwealth v. DeBlase*, 542 Pa. 22, 39, 665 A.2d 427, 435 (1995) (issue of constitutional dimension raised in *Brion* posed a complex analysis of the nature and reach of the fundamental right to privacy protected by Article I, Section 8). As such, retroactive application of *Brion* allows this Court to resolve cases before it on direct review in light of, and in conformity with, its best understanding of governing constitutional principles.[3]

---

3. Both the Commonwealth and Justice Castille's dissent rely on this Court's decision in *Commonwealth v. Miller*, 490 Pa. 457, 473, 417 A.2d 128, 136 (1980), to support their position that the purpose of the *Brion* rule, to amplify the exclusionary rule and not to cure a defect in the criminal trial affecting the verdict's reliability, weighs in favor of prospective application of *Brion*. In *Miller*, this Court, in examining the purpose prong of the retroactivity analysis, stated that where the

> major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function ... the new rule has been given complete retroactive effect. Conversely, the same standard strongly supports prospectivity for a decision amplifying the exclusionary rule, the primary purpose of which is to deter unlawful police conduct.

*Id.* at 473, 417 A.2d at 136. The Superior Court also employed this language to support its finding that applying *Brion* retroactively to the

Furthermore, given the convoluted history and constitutional uncertainty surrounding the issue finally resolved by *Brion,* I am not persuaded by the Commonwealth's argument under the second prong that law enforcement authorities' reliance on a practice which did not require a court-approved search warrant was so clearly justified as to compel prospective application.

The holding in *Brion* came on the heels of a somewhat disjointed and tortured history of cases wavering on whether, and under what circumstances, the Pennsylvania Constitution allows the police to direct a consenting informant to electronically record an individual's conversations and transmit them back to the police pursuant to section 5704(2)(ii) of the Wiretap Act. *See* 18 Pa.C.S. § 5704(2)(ii). Seven years before this Court's decision in *Brion,* the Superior Court decided *Commonwealth v. Schaeffer,* holding for the first time that Article I, Section 8 required the police to obtain judicial authorization in the form of a search warrant based on probable cause before sending a confidential informant into a suspect's home to electronically record his conversations pursuant to § 5740(2)(ii) of the Wiretap Act. *Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987) (en banc), *aff'd per curiam by divided court,* 539 Pa. 272, 652 A.2d 294 (1994).

However, several subsequent decisions, while not directly overruling *Schaeffer,* appeared to challenge its vitality. While the Commonwealth's appeal to this Court in *Schaeffer* was

present cases would not serve the deterrent purpose of the exclusionary rule since the police conduct at issue had not clearly been declared unconstitutional when it occurred. However, *Miller* expressly relied on federal constitutional standards, whereas *Brion* relied exclusively on state constitutional standards. *Id.* at 472 n. 11, 417 A.2d at 136 n. 11. In *Commonwealth v. Edmunds,* this Court held that the purpose underlying the exclusionary rule in Pennsylvania, which includes the safeguarding of the right to privacy embodied in Article I, Section 8, is distinct from the purpose underlying the exclusionary rule under the Fourth Amendment, which is solely to deter unlawful police conduct. *Edmunds,* 526 Pa. 374, 395–99, 586 A.2d 887, 897–99 (1991). Given that the language in *Miller* does not fully envision the purposes of the exclusionary rule as embodied in our state constitution, coupled with this Court's ardent protection of the fundamental right to privacy in one's home, I am not persuaded that this argument defeats retroactive application of *Brion* to these cases.

pending, this Court decided *Commonwealth v. Blystone*, which involved a state constitutional challenge to the warrantless, unilaterally consensual interception of outside-the-home conversations made pursuant to § 5704(2)(ii) of the Wiretap Act. *Blystone*, 519 Pa. 450, 461, 549 A.2d 81, 86 (1988), *aff'd on other grounds, Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). In rejecting Blystone's argument, this Court held that the challenged conversations were properly admissible and did not violate a defendant's constitutional rights under Article I, Section 8.[4] *Id.* at 466, 549 A.2d at 88. Shortly after *Blystone*, in early 1989, this Court entered a per curiam order in *Commonwealth v. Barone*, reversing the Superior Court's decision which had found in-home tape recordings subject to suppression, by simply citing to *Blystone*. *Barone*, 520 Pa. 118, 552 A.2d 1048. (1989).

Also in 1989, a panel of the Superior Court decided *Commonwealth v. Brion*, 381 Pa.Super. 83, 552 A.2d 1105 (1989), *rev'd*, 539 Pa. 256, 652 A.2d 287 (1994), finding that Article I, Section 8 did not require the police to obtain prior judicial approval before sending an informant into a suspect's home to record his conversations on the basis that *Blystone*, in validating a warrantless one-party consensual body wiretap under § 5704(2)(ii), had overruled *Schaeffer sub silentio*. *Brion*, 552 A.2d at 1107.

In December of 1994, this Court's decision in *Brion* finally ended the uncertainty surrounding police use of in-home body wires by definitively holding that Article I, Section 8 requires police to first obtain a judicial determination of probable cause before engaging in a unilaterally consensual interception of oral communications in a suspect's home pursuant to § 5704(2)(ii) of the Wiretap Act. *Brion*, 539 Pa. at 261, 652

---

**4.** Although the interception at issue in *Blystone* did not occur in the defendant's residence, this Court did not specifically address the issue of the significance of locality in this context. *See also Commonwealth v. Rodriguez*, 519 Pa. 415, 418, 548 A.2d 1211, 1213 (1988)(upholding interceptions of oral communications made pursuant to § 5704(2)(ii) of the Wiretap Act in the face of challenges under Article I, Section 8, by citing *Blystone* but without specifically discussing the issue of interceptions made in a private residence).

A.2d at 289. Given this history, I do not believe that the second prong of the *Blackwell* analysis weighs in favor of affording *Brion* prospective effect only.

Finally, in terms of the third prong of the *Blackwell* analysis, the retroactive application of *Brion* will have a limited effect on the administration of justice, given that its application is restricted to the instant cases and only those cases pending on direct appeal at the time of our decision in *Brion* which properly preserved the issue. *Cf. Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 690 A.2d 1146 (1997) (third prong of *Blackwell* retroactivity analysis favored prospective application since retroactive application of decision at issue would place large burden on courts). Cases involving unchallenged interceptions, which are now final, will not be upset or affected by the retroactive application of *Brion*. *See also Commonwealth v. Fowler*, 550 Pa. 152, 703 A.2d 1027, 1033 (1997) (*Brion* is not to be applied retroactively to cases on collateral appeal).

Thus, I find that the three factors of the retroactivity analysis do not weigh in favor of prospective application overall, and therefore, find no reason to abandon the general rule of retroactivity in *Cabeza*. I therefore join in the result reached by the majority that the rule articulated in *Brion* is to be retroactively applied to all cases which properly preserved the issue and which were on direct appeal when this Court issued its decision in *Brion*. Since both *Ardestani* and *Metts* fit this criteria for retroactive application, both Appellants are entitled to receive the benefit of the principle announced in *Brion*, which compels suppression of the intercepted conversations.

CASTILLE, Justice, dissenting.

I respectfully dissent because I do not agree that this Court's holding in *Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287 (1994), should be given retroactive application. Further, I find the holding of *Brion* inapplicable to the facts of appellant Metts' case.

Under the State and Federal Constitutions, retroactive or prospective effect for decisions expounding new constitutional rules affecting criminal trials is neither prohibited or required. *Blackwell v. Commonwealth State Ethics Commission*, 527 Pa. 172, 181, 589 A.2d 1094, 1098 (1991). This Court has applied several different types of analysis in determining whether a particular decision should be given retroactive effect or prospective application. The general rule is that a new rule is to be applied retroactively to cases where the question is properly preserved at all stages of adjudication up to and including any direct appeal. *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). However, this Court has recognized that "although retroactivity is the general rule, a sweeping rule of retroactive application is not justified. Retrospective application is a matter of judicial discretion which must be exercised on a case by case basis." *Blackwell*, 527 Pa. at 182, 589 A.2d at 1099.

This Court has adopted the approach which views the decision of whether to apply a new rule retroactively or prospectively as a function of three considerations: (1) the purpose to be served by the new rule; (2) the extent of the reliance on the old rule; and (3) the effect on the administration of justice by the retroactive application of the new rule. *Id.* at 182–83, 589 A.2d at 1099 (quoting *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)).[1] In *Commonwealth v. Miller*, 490 Pa. 457, 472, 417 A.2d 128,

---

1. In *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court held that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past. *Id.* The holding of *Griffith* is not applicable to the question of whether this Court's decision in *Brion* should be retroactively applied. The retroactivity principle of *Griffith* is certainly applicable to all questions concerning federal law. However, this Court need not apply the same standards to issues dealing with state law. State courts have the authority to determine the retroactivity of their own decisions when questions of state law are at issue. *See Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 99, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). *Brion* was decided under Article I, Section 8 of the Pennsylvania Constitution. Accordingly, this Court is free to apply the *Blackwell* analysis concerning retroactivity.

136 (1980), *cert. denied, Miller v. Pennsylvania,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981), this Court stated that the purpose to be served by the new rule should receive primary consideration. "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect." *Id.,* quoting *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971) (plurality opinion). Conversely, the same standard "strongly supports *prospectivity* for a decision amplifying the evidentiary exclusionary rule." *Id.,* quoting *Desist, supra,* 394 U.S. at 249, 89 S.Ct. 1030 (emphasis added).

The threshold question is whether the decision announces a new principle of law. *Cleveland v. Johns–Manville Corp.,* 547 Pa. 402, 413, 690 A.2d 1146, 1152 (1997). If it does, then it is proper for this Court to give the rule only prospective effect. *Id.* Here, there is no dispute that *Brion* enunciated a new principle of law. Additionally, the ruling in *Brion* was not foreshadowed by any earlier ruling of this Court. Rather, the holding of *Brion* was in stark contrast to this Court's earlier decisions concerning warrantless, unilaterally consensual interception of conversations. *See Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81, (1988), *aff'd on other grounds, sub nom, Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) (holding that statements obtained through a warrantless, unilaterally consensual interception of outside-the-home conversations were properly admissible and did not violate a defendant's constitutional rights under Article I, Section 8); *Commonwealth v. Rodriguez,* 519 Pa. 415, 418, 548 A.2d 1211, 1213 (1988) (citing *Blystone* to uphold interceptions of conversations where an informant with a body transmitter purchased drugs from the defendant); *Commonwealth v. Barone,* 520 Pa. 118, 552 A.2d 1048 (1989) (per curiam order citing *Blystone* to reverse the Superior Court's Memorandum decision suppressing recordings that had been taped *in the defendant's residence* ). *See also, Commonwealth v. Brion,* 381 Pa.Super. 83, 552 A.2d 1105 (1989), *rev'd,* 539 Pa. 256, 652

A.2d 287 (1994) (citing *Blystone,* the Superior Court determined that police were not required under Article I, Section 8 to obtain prior judicial approval before sending an informant into a suspect's home to record his conversations. In so holding, the Superior Court concluded that *Blystone* had overruled *sub silentio* its prior decision in *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987) (en banc), which required police to obtain a warrant prior to recording a defendant's conversations in his home using a wired informant.) Consequently, under the law in existence at the time that appellants' inculpatory statements were intercepted, police were not required to first obtain a judicial probable cause determination before engaging in a unilaterally consensual participant interception. *See Blystone, supra.* On July 22, 1992, police intercepted a statement made by appellant Ardestani indicating that he wished to hire someone to kill his wife. Ardestani was convicted on January 8, 1993. In appellant Metts' case, the interception of his statements admitting that he murdered a corrections officer occurred on January 27, 1992 and February 6, 1992. Metts was convicted on May 10, 1993. This Court did not decide *Brion* until December 30, 1994, long after both the interceptions of the statements and appellants' subsequent convictions.

Application of the *Blackwell* factors leads to the conclusion that this Court's decision in *Brion* should not be applied retroactively. First, under *Blackwell,* although the purpose of the new rule announced in *Brion* was designed to safeguard privacy, this purpose will not be enhanced or furthered by applying the new rule to cases where the interceptions previously occurred under constitutionally permissible circumstances at the time. Prior to *Brion,* a defendant could not establish that he was entitled to the benefit of a court order based upon probable cause prior to having his conversations recorded in his home, as this Court had not yet determined that there was a reasonable expectation of privacy under such circumstances. Even if a retroactive application of *Brion* could restore a lost privacy interest, which it cannot, there was no privacy interest in effect at the time police intercepted the conversations at issue. Thus, there is nothing to restore.

In a similar vein, retroactive application of the *Brion* rule will do nothing to further the primary goal of suppression: deterring police misconduct. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (protecting one's constitutional right against unreasonable searches and seizures by depriving law enforcement officials of the benefits derived from using unlawfully obtained information). The police officers in the instant matters acted in strict conformity with the constitutional requirements in force at the time that the statements in question were intercepted. Evidence which was lawfully obtained should not be suppressed since there was no police misconduct to deter.

Under the second prong of the test enunciated in *Blackwell*, the extent of the reliance on the old rule, there is no question that the officers and prosecutors involved in the instant matters relied on the caselaw in effect at the time they intercepted the conversations at issue. Law enforcement officers should not be punished for conforming their conduct to the law in existence at the time that they investigate a crime. Here, it was reasonable for the officers involved to conclude that there were no constitutional impediments to taping the appellants' conversations.

Finally, under the third prong of *Blackwell*, applying *Brion* retroactively does nothing to further the administration of justice. In fact, suppressing the inculpatory statements at issue, which were obtained under constitutionally permissible circumstances at the time of interception, hinders the administration of justice by placing law enforcement officials in the untenable position of being unable to rely on the validity of the caselaw in effect at the time of their investigations. Law enforcement officials should not be punished for their inability to predict the future holdings of this Court, especially where, as with *Brion*, a new decision represents such a drastic departure from past precedent. Furthermore, retroactive application of *Brion* would place a burden on the courts which would be forced to determine whether evidence which was obtained under constitutionally permissible circumstances should, in retrospect, be suppressed.

212

Finally, under *Miller*, the new rule of law announced in *Brion* did not cure a defect in appellants' criminal trials which affected or substantially impaired the truth-finding function, nor did *Brion* correct a serious flaw in the fact-finding process at trial. Indeed, the evidence at issue undeniably enhances the truth seeking function, as the relevance of appellants' inculpatory statements to the ultimate issues in the case is undeniable. Thus, retroactive application is not mandated. I agree with the Superior Court's determination in the instant matter that *Brion* expanded the scope of the exclusionary rule; and therefore, under *Miller*, the preferred result is prospective application. *See Commonwealth v. Metts*, 447 Pa.Super. 275, 292, 669 A.2d 346, 355 (1995).

I am persuaded by the cases in which this Court has applied a new rule prospectively where the rule represented a clear break with the past. In *Miller*, 490 Pa. at 471, 417 A.2d at 136, this Court refused to give retroactive effect to the holding of *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), which required police to obtain a warrant prior to arresting a suspect in his home absent exigent circumstances. Miller's arrest occurred over two years before this Court's holding in *Williams*. In evaluating whether the holding of *Williams* should have been given retroactive effect, this Court properly noted that the objectives of the exclusionary rule would not be furthered by suppressing evidence of fruits of arrests which were legal when made. This Court also found that law enforcement authorities justifiably relied upon pre-existing caselaw, which did not require a warrant to arrest a suspect in his home. Finally, this Court determined that the holding of *Williams* did not implicate the truth determining process. Therefore, all the governing criteria ran in favor of prospective application of the *Williams* rule. *Miller*, at 473, 417 A.2d at 137; *see also Commonwealth v. Geschwendt*, 500 Pa. 120, 454 A.2d 991 (1982) (plurality opinion) (applying the ruling of *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977) concerning the jury instruction in insanity defense cases, prospectively because the new rule was a clear break from the past).

Most recently, in *Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 690 A.2d 1146 (1997), this Court refused to give retroactive application to *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996), which held that a plaintiff asserting a non-cancer, asbestos-related claim could not recover for any part of the damages relating to cancer, thereby eliminating claims for increased risk and fear of cancer where cancer was not present. Applying the *Blackwell* factors, this Court first determined that *Simmons* announced a new rule of law. *Cleveland*, 547 Pa. at 413, 690 A.2d at 1152. This Court further concluded that there had been considerable reliance on the old rule and that retroactive application of *Simmons* would place a tremendous burden on the courts. *Id.* at 414, 690 A.2d at 1152. Thus, although this Court found that the first factor of *Blackwell* supported a retroactive application due to the significant purpose of the rule to promote fairness, the second and third factors strongly favored only a prospective application of *Simmons*. In the instant matters, the relevant factors weigh heavily in favor of prospective application of the *Brion* rule; therefore, I disagree with the majority that the holding of *Brion* should be retroactively applied.

Finally, I find the holding of *Brion* inapplicable to appellant Metts' case. *Brion* purports to protect persons from governmental invasions of privacy *within one's own home*. *Brion*, 539 Pa. at 261, 652 A.2d at 289. Metts' statements were recorded at the home of his sister, where he occasionally stayed. The trial court noted that Metts did not permanently reside in his sister's apartment but was merely a "transient" occasional overnight guest. Accordingly, I do not believe that Metts had an expectation of privacy in his sister's apartment where he sometimes spent the night worthy of the protection afforded in *Brion*.

For the aforementioned reasons, I dissent.[2]

This dissenting opinion is joined by Justice NEWMAN.

---

**2.** I further dissent as I do not believe that *Brion* was correctly decided. *See Brion*, 539 Pa. at 262, 652 A.2d at 290 (Nix, C.J. dissenting, joined by Papadakos and Castille, JJ.).