## Commonwealth v. Frattaroli

*Nathan L. Boob,* for Commonwealth.
*Joseph M. Devecka,* for defendant.

KISTLER, *J.,* January 15, 2010—Presently before the court is an omnibus pretrial motion in the form of a motion to suppress filed by Kristopher Frattaroli on November 30, 2009. A hearing was held on December 18, 2009, and Mr. Frattaroli filed a brief with the Centre County Prothonotary on January 4, 2010. For the following reasons, Mr. Frattaroli's motion to suppress is denied.

## STATEMENT OF FACTS

(1) Detective Joshua Martin is a detective with the Ferguson Township Police and also a member of the Centre County Drug Task Force.

(2) Detective Martin had developed a confidential informant who provided information that Mr. Frattaroli was selling marijuana.

(3) The confidential informant made contact with Mr. Frattaroli by text message from his own phone.

(4) The confidential informant then came to the police station and discussed these text messages with Detective Martin on April 28, 2009.

(5) While at the police station and in Detective Martin's presence, the confidential informant text messaged Mr. Frattaroli to find out the apartment number he was supposed to meet to purchase the drugs.

(6) The confidential informant received a text message back with the message, B1.

(7) Based on this information, Detective Joshua Martin set up surveillance and the controlled buy took place in Mr. Frattaroli's apartment.

(8) Detective Martin, with the assistance of Detective Paul were able to verify that the phone number used to contact the confidential informant was Mr. Frattaroli's by using the internet.

(9) Detective Martin then made contact with Mr. Frattaroli by telephone on September 18, 2009, and explained that he had a warrant for his arrest.

(10) Detective Martin then made arrangements with Mr. Frattaroli to meet at District Justice Dutchcot's office where he was arraigned.

(11) At this meeting Mr. Frattaroli was read his *Miranda* warnings and then admitted to selling marijuana.

(12) Mr. Frattaroli explained that he was trying to help a friend out.

(13) Detective Martin never used the confidential informant's phone to contact Mr. Frattaroli.

(14) Mr. Frattaroli sent the text messages to the confidential informant while he was in his apartment with the door closed.

## DISCUSSION

The sole issue addressed in Mr. Frattaroli's brief and at the hearing is, "Was Kris Frattaroli in his apartment with the door closed when Kris NLN texted back 'B-1'?" The court determines, based on Mr. Frattaroli's testimony at the suppression hearing that Mr. Frattaroli was in his apartment with the door closed when he made the text messages to the confidential informant. However, the court cannot understand, nor does Mr. Frattaroli explain how his location at the time the text messages were sent to someone outside his home has any relevance to the Wire Tap Act or the Fourth Amendment. When asked about this at the suppression hearing, Mr. Frattaroli's attorney stated that he believed there was case law which would show the relevance of his argument. After a review of Mr. Frattaroli's brief the court is no closer to deciphering the relevance of this issue than it was at the suppression hearing.

Mr. Frattaroli's brief mentions the case of *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994). In *Brion* a confidential informant *entered* the defendant's home wearing a consensual body wire and made a purchase of marijuana. The conversation between the two during the sale of marijuana from defendant to the informant was recorded and transmitted to the monitoring agents. Our Supreme Court held that "an individual can reasonably expect that his right to privacy will not be violated in his home through the use of any electronic surveillance." *Commonwealth v. Brion,* 539 Pa. 256, 261, 652 A.2d 287, 290 (1994). However, the *Brion* case does not address the issue of a defendant who initiates an

electronic communication to someone outside his home in a format which is automatically preserved because of the very nature of the communication.

Mr. Frattaroli also mentions *Commonwealth v. Cruttenden,* 976 A.2d 1176 (Pa. Super. 2009). In that case a police officer adopted the identity of a drug runner he had arrested and sent text messages to the person who was supplying the drug runner. The Superior Court held that the police officer's actions violated the Wire Tap Act because the officer intercepted the text messages using an electronic device, a cell phone. However, there are two crucial differences in *Cruttenden* and the case at bar. The first difference is that the officer in *Cruttenden* was posing as the drug runner in order to intercept messages intended for the drug runner. The second difference is that the officer's interception of the text messages was instantaneous.

In this case the confidential informant received text messages from Mr. Frattaroli and then notified the police later. The confidential informant did send one text message while at the police station and received a response. This message was still sent to the informant's phone and then relayed to Detective Martin. For these reasons the court believes that the case is readily distinguishable from *Cruttenden* but similar to *Commonwealth v. Proetto,* 771 A.2d 823 (Pa. Super. 2001).

In *Proetto,* E.E. was a 15-year-old complainant who was in a chat room. She joined a private chat room with a person with the screen name CR907. CR907 informed E.E. that he was a police officer working for the Colonial

Regional Police Department and e-mailed her a picture of him in police uniform, telling her 907 was his badge number. E.E. informed CR907 that she was 15 years of age. CR907 then proceeded to send E.E. inappropriate pictures as well as ask her to perform sexual acts. This continued for a full week. After each session E.E. saved a log of the chat room conversations and then reported these incidents to the police. Detective Morris then initiated conversation with CR907 in a chat room while posing under a different screen name. The conversation followed along the lines of those that E.E. had reported to the police.

After his arrest, Proetto made a motion to suppress the pictures he had sent to E.E. and Detective Morris as violating the Wire Tap Act. Proetto's motion was denied by the trial court. On appeal, the Superior Court affirmed, and held that the messages sent to E.E. were not "intercepted" pursuant to the Wire Tap Act because the "acquisition of the communications was not contemporaneous with their transmission." *Commonwealth v. Proetto,* 771 A.2d 823, 829 (Pa. Super. 2001). As is the case at bar, the confidential informant received the text messages and then reported them to Detective Martin. Therefore the court determines that the text messages sent to the confidential informant by Mr. Frattaroli were not intercepted pursuant to the Wire Tap Act.

*Commonwealth v. Proetto* is also instructive in regards to the Fourth Amendment challenge brought by Mr. Frattaroli. In *Proetto,* the Superior Court determined that the e-mails and chat room conversations E.E. forwarded to Detective Morris did not violate Proetto's rights under

the Fourth Amendment or the Pennsylvania Constitution because,

"In order to invoke the protections of the Pennsylvania Constitution, the individual must possess a legitimate expectation of privacy in the area searched. *Commonwealth v. Ardestani,* 558 Pa. 191, 736 A.2d 552, 556 (1999). An expectation of privacy is present when the individual's conduct exhibits an actual expectation of privacy which is recognized by society as reasonable. *Id.* The protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. *Commonwealth v. Brundidge,* 533 Pa. 167, 620 A.2d 1115, 1117 (1993). An expectation of privacy is present when the individual, by his conduct, 'exhibits an actual (subjective) expectation of privacy' and that the subjective expectation 'is one that society is prepared to recognize as "reasonable"'.' *Id.* (quoting *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)). The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances. *Id.*" *Id.* at 830-31.

The *Proetto* court determined that Proetto had no expectation of privacy with regard to his e-mail or chat room conversations and therefore there was no violation of appellant's rights. It becomes apparent then that the question that should be asked is whether Mr. Frattaroli had an expectation of privacy in the invaded place. In

this case, the invaded place constituted the text messages contained on the confidential informant's phone. However, this was not the issue raised by Mr. Frattaroli's attorney and this court is not going to address the issue sua sponte. Mr. Frattaroli's attorney raises the sole issue of whether Mr. Frattaroli closing his apartment door while making a text message constituted conduct which exhibited an actual expectation of privacy which society is prepared to recognize as reasonable. See *Katz v. United States,* 389 U.S. 347 (1967).

To this question the court answers that the fact Mr. Frattaroli closed the door before sending text messages has no relevance whatsoever to the Fourth Amendment or Pennsylvania Constitution. This argument is nearly akin to asking that a ransom letter received by a victim, who subsequently hands the letter over to police, should be suppressed because the perpetrator wrote the letter in his house with the door closed. For the aforementioned reasons discussed above, the court denies Mr. Frattaroli's omnibus pretrial motion to suppress the text messages.

## ORDER

And now, January 15, 2010, Mr. Frattaroli's omnibus pretrial motion to suppress the evidence is denied.