## Commonwealth *v.* DiSilvio, Appellant.

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John L. Doherty,* for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, with him *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., February 27, 1975:

This appeal challenges the admissibility of evidence obtained by police officers answering the appellant's telephone during an authorized search of his premises. The appellant contends that the information elicited from the callers was obtained in violation of Pennsylvania's anti-wiretapping statute as it stood in 1972 when the search took place.[1] We hold that the actions of the police in answering the telephone did not constitute an interception of a communication such as is prohibited by the Act of July 16, 1957, the law in effect when the search

---

1. Act of July 16, 1957, P.L. 956, §1, 18 P.S. §3742 (Supp. 1973-74). This Act was repealed by the Act of December 6, 1972, P.L. 1482, §5, and replaced by Act of December 6, 1972, P.L. 1482, §1, *as amended* 18 Pa. C.S. §5702 (Supp. 1974-75).

took place, and the evidence so obtained is therefore admissible. The appellant also raises three other arguments, all without substance, based on the evidence obtained from the telephone conservations. Since appellant's arguments are unpersuasive, we must affirm the judgment of the lower court.

The appellant was indicted and found guilty of pool-selling and bookmaking.[2] The evidence against him at his trial was the product of a police raid on his center of operations, carried out on October 28, 1972. On that date, a number of detectives from the Pittsburgh Police executed a search warrant for a building suspected of being the locale of bookmaking activities. The detectives were required to force open the reinforced doors to gain entrance. While a number of the detectives were so occupied, the remainder arrested the appellant and another as they attempted to flee out the back. Once inside, the officers discovered in one room a table with three telephones, chairs, a television, radio, and heater. In addition they found rice paper, an adding machine, sports line sheets and a bucket of water containing a pasty residue. The three telephones continued to ring while the raid was in progress. The officers estimated that they answered in excess of 50 calls and testified that the callers asked for "Dom" (the appellant's first name is Dominick) or "Rick." When the callers were informed that the parties to whom they wished to speak were "tied up," most of them hung up, but a few proceeded to place bets.

Appellant contends that by answering the telephones the police officers abused the appellant's right to privacy and violated Pennsylvania's anti-wiretapping statute, and argues that their actions render the evidence of the conversations inadmissible. The Act of July 16, 1957, 18 P.S. §3742, in effect at the time of the incident, provides

---

2. Act of June 24, 1939, P.L. 872, §607, 18 P.S. §4607, *repealed*, Act of December 6, 1972, P.L. 1482, §5.

in part: "[n]o person shall intercept a communication by telephone . . . without permission of the parties to such communication. No person shall install or employ any device for overhearing or recording communications passing through a telephone . . . line with intent to intercept a communication in violation of this act." The statute protects a private realm of great sensitivity and for that reason the courts will review with particular care activity which might infringe on the right it protects. *See Commonwealth v. Murray*, 423 Pa. 37, 223 A.2d 102 (1966).[3] In interpreting the statute, the Supreme Court recently noted that "[t]he statute is designed to secure the integrity of this particular means of private communication. This Court has interpreted the Act as mandating that no person shall without the consent of all parties to the conversation surreptitiously intercept or record the communication." *Commonwealth v. Gullett*, 459 Pa.    , 329 A.2d 513, 518-519 (1974).

Since the conduct of the officers in the instant case did not involve recording the conversation or the use of any electronic device for overhearing, we need only consider whether their activity constituted such an interception under the act as would require the consent of the parties to the communication. *Compare Commonwealth v. Gullett*, supra, *with Parkhurst v. Kling*, 266 F. Supp. 780 (E.D. Pa. 1967). The officers here simply answered the telephones and spoke directly with the callers. In our view, this is not what was intended by the legislature to constitute an interception. The callers freely elected to talk to the officers, whether or not they were informed

---

3. In *Commonwealth v. Murray*, 423 Pa. 37, 51, 223 A.2d 102, 110 (1966) the Supreme Court quoted from Justice BRANDEIS'S dissent in *Olmstead v. United States*, 277 U.S. 438, 476 (1928) to express the importance of the protection against wiretapping in the eyes of the Court. "As a means of espionage, writs of assistance and general warrants are but puny instruments of tyranny and oppression when compared with wire-tapping."

of the identity and occupation of the recipients of the calls. By receiving the communication directly over the means of transmission employed, the officers were in fact themselves parties to the call. *Commonwealth v. Smith,* 186 Pa. Superior Ct. 89, 140 A.2d 347 (1958). Thus, no interception occurred, and the testimony of the officers as to their conversations is admissible. *Commonwealth v. Papszycki,* 442 Pa. 234, 275 A.2d 28 (1971).[4]

The appellant also argues that he was denied his sixth amendment right to confront his accusers, since the callers to whom the officers spoke did not testify, and that the testimony concerning the conversations was inadmissible hearsay. We disagree with both these contentions. It has long been held in this Commonwealth that evidence of telephone calls is admissible in cases such as this. *Commonwealth v. Smith,* supra; *Commonwealth v. Parente,* 184 Pa. Superior Ct. 125, 133 A.2d 561 (1957) ; *Commonwealth v. Mattero,* 183 Pa. Superior Ct. 548, 132 A.2d 905 (1957) ; *Commonwealth v. Markwich,* 178 Pa. Superior Ct. 169, 113 A.2d 323, *allocatur refused,* 178 Pa. Superior Ct. *xxviii* (1955) ; *Commonwealth v. DuHadway,* 175 Pa. Superior Ct. 201, 103 A.2d 489 (1954) ; *Commonwealth v. Palace,* 164 Pa. Superior Ct. 58, 63 A.2d 511 (1949) ; *Commonwealth v. Prezioso,* 157 Pa. Superior Ct. 80, 41 A.2d 350, *allocatur refused,* 157 Pa. Superior Ct. *xxiii* (1945). This weight of precedent is not contrary to the hearsay rule. When a statement is offered in evidence to prove the truth of a fact asserted therein, the speaker's credit and the circumstances of the utterance become basic to a proper evaluation of the statement. Therefore, the hearsay rule generally excludes such evidence unless the speaker is on hand to personally testify. But where the statement is offered only to prove that it was made, as in this case without

---

4. *See* Annot., 9 A.L.R. 3d 423 (1966) for cases in other jurisdictions interpreting the term "interception" as applied to direct communication between police officers and callers.

reference to the truth of its content, confrontation of the speaker is no longer necessary to the inquiry. The statement may still be excluded, but on grounds other than hearsay. *See* VI J. Wigmore, Evidence §1766 (3d Ed. 1940). "Testimony as to an out-of-court statement is not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made." *Commonwealth v. Sampson,* 454 Pa. 215, 219, 311 A.2d 624, 626 (1973). The statements made by the callers placing bets or asking to speak to the appellant were not offered to prove the truth of their factual content. The testimony of the officers as to the calls merely went to prove that such calls were actually coming in during the search, not that a certain amount of money was being placed on a certain event by a particular person. Such testimony does not constitute hearsay.

Appellant's claim of denial of his sixth amendment rights[5] is also without merit. The sixth amendment guarantees an accused the right to be confronted with the witnesses against him in order to afford the defendant, among other things, the valued opportunity to cross-examine adverse witnesses. *See Pointer v. Texas,* 380 U.S. 400 (1965). In this case the accusing witnesses were actually the detectives who received the calls, not the people who made them. "The accused's right of confrontation . . . is violated when an out-of-court statement of a third person *implicating the accused* is introduced at trial." *Commonwealth v. Sampson,* supra at 219, 311 A.2d at 627 (emphasis original). Here the statements made by the callers were not accusatory, nor did the statements themselves directly implicate the appellant in illegal activity. It was the fact that such statements were

---

5. U.S. Const. amend. VI. The sixth amendment was made applicable to the states through the fourteenth amendment, U.S. Const. amend. XIV, by the Supreme Court in *Pointer v. Texas,* 380 U.S. 400 (1965).

made, not the truth or falsity of their actual content, that was damaging to the appellant and tended to prove he was implicated in illegal activity. Consequently, appellant's sixth amendment rights are protected, and the dangers against which those rights stand are averted, by appellant's cross-examination of the detectives who are the true accusing witnesses.

Finally, the appellant challenges the sufficiency of the evidence against him, and voices concern over the dangers inherent in receiving evidence of telephone conversations from unnamed sources. The evidence is sufficient when, accepting as true all the evidence and all reasonable inferences arising therefrom upon which the finder of fact could properly base its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime charged. *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974). Although "evidence of phone calls should be admitted with caution because of the ease with which they may be counterfeited . . . [t]his danger is significantly lessened when either a number of phone calls are received or physical evidence corroborates the evidence of phone calls." *Commonwealth v. Bufalini,* 223 Pa. Superior Ct. 489, 492, 302 A.2d 352, 354 (1973). *See also Commonwealth v. Prezioso,* 157 Pa. Superior Ct. 80, 41 A.2d 350 (1945). In the present case, the sheer number of telephone calls (in excess of 50) from a variety of different people reduced the possibility that they were fabrications. Furthermore, the physical evidence of a room barren and unequipped for any purpose other than that activity for which the appellant was arrested, containing little but rice paper, line sheets, a bucket of water with sediment of what could be dissolved rice paper, and telephones constantly ringing with calls placing bets strongly supports the finding that the appellant was guilty of bookmaking.

Judgment of sentence affirmed.