COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert D. PROETTO, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 24, 2000.
Filed March 28, 2001.

824

Tommaso V. Lonardo, Allentown, for appellant.

Stephen B. Harris, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before DEL SOLE, JOHNSON and BECK, JJ.

DEL SOLE, J.:

¶ 1 Appellant, Robert Proetto, was convicted of criminal solicitation, obscene and other sexual materials and performances, and corruption of minors. After his sentencing, Appellant filed this appeal. After reviewing the record and briefs, and the applicable statutory and constitutional law, we affirm.

¶ 2 Appellant, while a police officer, was arrested for criminal solicitation, dissemination of obscene materials and corruption of minors. These charges stemmed from his communications with a 15–year–old girl over the Internet.

¶ 3 The 15–year–old complainant, "E.E.," was connected to the Internet and while on the Internet was using the screen name "Ellynn." She was in a public chat room when she began receiving private chat messages from Appellant, who was using the screen name "CR907." While in this public chat room, E.E. was invited to enter a private chat room and converse "real time" with the person using the name "CR907." Appellant informed E.E. that he was a police officer working for the Colonial Regional Police Department and e-mailed her a picture of him in police uniform, telling her 907 was his badge number. E.E. informed Appellant that she was 15 years of age. Logs, printed hard copies of their on-line conversations, reflect that Appellant asked E.E. to video-tape herself in the nude masturbating with her legs spread. Appellant also expressed interest in performing numerous sexual acts with her. While making these comments, Appellant stated that he had to be careful because E .E. was only 15 years old. Subsequently, Appellant transmitted to E.E. via e-mail a file containing a photograph of his erect penis.

¶ 4 During the next week, E.E. and Appellant chatted several more times. During these chats, Appellant made explicit remarks and repeatedly expressed his desire to talk on the telephone, meet, and engage in sexual acts with this 15–year–old girl. After each chat with CR907, E.E. logged, or saved, the Internet chat messages.

¶ 5 Shortly thereafter, E.E. reported these incidents to the Bristol Borough Police Department. Detective Randy Morris was assigned to investigate the charges. E.E. gave Detective Morris a diskette containing logs of the chat dialogues, e-mail messages and the two photographs Appellant had e-mailed to her. Detective Morris instructed E.E. to cease all communication with Appellant, but to page him the next time that Appellant was observed on-line.

¶ 6 A few days later, E.E. contacted Detective Morris when she saw CR907 in another public chat room. Detective Morris entered the chat room using the screen name "Kelly15F" and initiated conversation with Appellant. During that chat, Appellant wrote to Kelly15F that he would not mind kissing a 15–year–old as long as she would not tell anybody. He also suggested she make a nude videotape of herself in exchange for his sending her nude photographs of himself. Detective Morris made a log of the chat. The next day the matter was referred to the Bucks County District Attorney's Office and Appellant was subsequently arrested.

¶ 7 Appellant was charged with committing Criminal Solicitation,[1] Obscene and Other Sexual Materials and Performances,[2] and Corruption of Minors.[3]

¶ 8 Appellant filed an omnibus pre-trial motion requesting various pre-trial relief, including the suppression of evidence and statements. Appellant sought to suppress the communications and pictures sent to E.E. and Kelly15F via e-mail and chat rooms. Appellant asserted that the e-mail and chat messages were intercepted in violation of the Pennsylvania Wiretap Act, Article I Section 8 of the Constitution of the Commonwealth of Pennsylvania, the Fourth Amendment of the United States Constitution and the Pennsylvania Rules of Criminal Procedure.[4] A pre-trial hearing was held and the trial court denied Appellant's motions to suppress. After a non-jury trial, Appellant was sentenced to a term of six months to twenty-three months, and placed on intermediate punishment with the first six months to be served on house arrest. This appeal was timely filed.

¶ 9 On appeal, Appellant presents the following questions:

I. Did the lower court err, when it admitted evidence seized by the Commonwealth without prior court approval consisting of private Internet chat communications?

II. Did the lower court err, when it failed to impose constitutional protection to communication conducted on a computer connected to the Internet through telephone lines?

III. Did the lower court err, in failing to rule that,[sic] interceptions of private computer chat communications violate the Pennsylvania Wiretap Act, when done without prior authorization?

IV. Did the lower court err, in failing to suppress the alleged statements of the Appellant?

1. 18 Pa.C.S.A. § 902(a)

2. 18 Pa.C.S.A. § 5903(a)(c)

3. 18 Pa.C.S.A. § 6301

4. It should be noted that in its Opinion, the trial court asserts that Appellant's sole ground for challenging the use of the e-mail and chat room printouts was the Wiretap Act. Appellant asserts that this statement is incorrect. Appellant contends that he asserted grounds to suppress evidence based not only upon the Wiretap Act, but also on Article I Section 8 of the Pennsylvania Constitution, the Pennsylvania Rules of Criminal Procedure and the Constitution of the United States. Appellant asserts that these grounds were raised in his Omnibus Pre–Trial Motion, specifically in section II of the Motion, the Motion to Suppress Evidence. Upon review of the Omnibus Motion, it appears that Appellant did allege that the grounds for suppression of evidence were based on violations of Pennsylvania Criminal Statutes, Article I, Section 8 of the Pennsylvania Constitution, and the United State Constitution, in addition to the Wiretap Act. Appellant's Omnibus Motion, ¶¶ 12, 20, 24. Consequently, we will address the claims made by Appellant on these grounds as well.

V. Did the lower court err, in finding that the evidence was sufficient as a matter of law to convict the Appellant beyond a reasonable doubt?

Appellant's Brief at 3

***Whether the trial court erred in failing to suppress the electronically transmitted communications sent by Appellant.***

¶ 10 The first four questions presented by Appellant involve the same substantive issue. The sum of the issues is whether the trial court erred in failing to suppress the electronically transmitted communications of Appellant, on grounds that such statements were obtained by means violative of the Pennsylvania Wiretap Act and/or Appellant's constitutional rights. These issues present a case of first impression in this jurisdiction. These issues will be addressed simultaneously.

■ ¶ 11 In reviewing a trial court's denial of a motion to suppress, the appellate court's responsibility is to determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Brundidge*, 533 Pa. 167, 620 A.2d 1115 (1993).

¶ 12 There are two distinct categories of electronic communications involved in this case. First are those received by E .E. from Appellant and then forwarded to Detective Morris by E.E. Second are those statements received by Detective Morris directly from Appellant, while Detective Morris was using the moniker "Kelly15F." We will address each category separately.

### 1. Communications received by E.E. and subsequently forwarded to Detective Morris.

¶ 13 With regard to the first set of communications, the Pennsylvania Wiretap-

ping and Electronic Surveillance Control Act is not applicable.

¶ 14 Section 5703 of the Act provides:

§ 5703. Interception, disclosure or use of wire, electronic or oral communications

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

(1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

(2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

(3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa.C.S.A. § 5703.

■ ¶ 15 For an action to be in violation of the Act, the statements must have been "intercepted". The Act defines "intercept" as:

"Intercept." Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. The term shall include the point at which the contents of the communication

are monitored by investigative or law enforcement officers.

18 Pa.C.S.A. § 5702.

¶ 16 The communications at issue in this case were not intercepted. The messages were sent directly to E.E. After receiving these communications, E.E. subsequently forwarded the messages to Detective Morris. The acquisition of the communications was not contemporaneous with their transmission. The reasoning of the Fifth Circuit in *United States v. Turk,* 526 F.2d 654 (5th Cir.1976), cert. denied, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), is both persuasive and instructive. In *Turk,* the Fifth Circuit interpreted the term "interception" in the context of the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2510–2521, 18 U.S.C. §§ 2701–2711, which in pertinent part is identical to the Pennsylvania Wiretapping and Electronic Surveillance Act. *See* 18 U.S.C. § 2510(4); 18 Pa.C.S.A. § 5702 (definition of "interception"). The Fifth Circuit held that the Secret Service did not intercept certain communications, because the acquisition of the contents of those communications was not contemporaneous with their transmission. *Id.* at 658–659. In other words, when the conversation took place, it was not recorded contemporaneously by the government. *Id.* Accordingly, the Fifth Circuit held that an intercept "requires participation by the one charged with an 'interception' in the contemporaneous acquisition of the communication through the use of the device." *Id.* at 658. While this case is not binding on this Court, we agree with the interpretation of "intercept" as set forth in *Turk,* as it applies to electronic communications.

¶ 17 In this case, there was no contemporaneous acquisition of the communication. Rather, E.E. received the communication and later disclosed that communication to Detective Morris. Accordingly, there was no "interception" and these communications do not fall within the purview of the Pennsylvania Wiretapping and Electronic Surveillance Act.

¶ 18 Furthermore, the Appellant's e-mail and chat-room communications fall within the mutual consent provision of the Wiretapping and Electronic Surveillance Control Act. Section 5704 of the Act provides:

§ 5704. Exceptions to prohibition of interception and disclosure of communications

It shall not be unlawful and no prior court approval shall be required under this chapter for:

\* \* \*

(4) A person, to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception.

18 Pa.C.S.A. § 5704(4).

¶ 19 This situation is unlike one in which a party is engaging in a conversation over the telephone. While engaging in a conversation over the telephone, a party would have no reason to believe that the other party was taping the conversation. Any reasonably intelligent person, savvy enough to be using the Internet, however, would be aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message. By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message.

¶ 20 This court has held that answering machine tapes fall within the mutual consent provision of the Act. *See Commonwealth v. DeMarco,* 396 Pa.Super. 357, 578

A.2d 942 (1990). In *DeMarco*, the issue was whether an answering machine tape upon which incriminating information was recorded should be suppressed on the basis that it was subject to statutory exclusion because of an unlawful interception under the Wiretapping and Electronic Surveillance Control Act. *DeMarco*, 578 A.2d at 942. This Court held that the tape should not be suppressed under the Act because it fell within the mutual consent provision of the Act. *Id.* at 948. The court explained:

> ... we take judicial notice of the irrefutable fact that any reasonably intelligent person leaving a message on an ordinary answering machine would have to be aware of, and *consented by conduct* to, the recording of the message on the answering machine tape. Absent some special showing of unique attributes of a particular answering machine cloaking its identity as an answering machine (not suggested here), we cannot imagine how one could not know and intend that the message placed upon the answering machine tape *be taped, and by the very act of leaving a message, expressly consent by conduct to the taping of that message.* Thus, we find, as a matter of law, that ordinary answering machine tapes fall within the mutual consent provision of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5704(4), are *not* unlawful interceptions, and are not subject to the *statutory* exclusionary rule, 18 Pa.C.S.A. § 5721.

*Id.* at 948.

¶ 21 Sending an e-mail or chat-room communication is analogous to leaving a message on an answering machine. The sender knows that by the nature of sending the communication a record of the communication, including the substance of the communication, is made and can be downloaded, printed, saved, or, in some cases, if not deleted by the receiver, will remain on the receiver's system. Accordingly, by the act of forwarding an e-mail or communication via the Internet, the sender expressly consents by conduct to the recording of the message.

¶ 22 Appellant's challenge to the admission of these communications on the ground that they are violative of the Act is meritless. The trial court did not err in failing to suppress these communications.

¶ 23 Furthermore, the forwarding of the communications by E.E. to Detective Morris did not violate Appellant's rights under either the Pennsylvania Constitution or the United States Constitution. In order to invoke the protections of the Pennsylvania Constitution, the individual must possess a legitimate expectation of privacy in the area searched. *Commonwealth v. Ardestani*, 558 Pa. 191, 736 A.2d 552, 556 (1999). An expectation of privacy is present when the individual's conduct exhibits an actual expectation of privacy which is recognized by society as reasonable. *Id.* The protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. *Commonwealth v. Brundidge*, 533 Pa. 167, 620 A.2d 1115, 1117 (1993). An expectation of privacy is present when the individual, by his conduct, "exhibits an actual (subjective) expectation of privacy" and that the subjective expectation "is one that society is prepared to recognize as 'reasonable'." *Id.*, (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)). The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is

reasonable in light of all the surrounding circumstances. *Id.*

¶ 24 One of the courts that has addressed the situation involving e-mail and Internet communications has held that:

> ... [a] Defendant possessed a limited reasonable expectation of privacy in the e-mail messages he sent and/or received on AOL.... E-mail is almost equivalent to sending a letter via the mails. When an individual sends or mails letters, messages, or other information on the computer, that ... expectation of privacy diminishes incrementally ... Furthermore, the openness of the "chat room" diminishes Defendant's reasonable expectation of privacy.

*United States v. Charbonneau*, 979 F.Supp. 1177, 1184 (S.D.Ohio 1997).

¶ 25 In this case, Appellant had a limited expectation of privacy in his e-mails and chat-room communications. After receiving the electronic communications, E.E. forwarded the communications to the police. As another court addressing this issue noted:

> E-mail transmissions are not unlike other forms of modern communication.... For example, if a sender of first-class mail seals an envelope and addresses it to another person, the sender can reasonably expect the contents to remain private and free from the eyes of the police absent a search warrant founded upon probable cause. However, once the letter is received and opened, the destiny of the letter then lies in the control of the recipient of the letter, not the sender, absent some legal privilege.... Thus an e-mail message, like a letter, cannot be afforded a reasonable expectation of privacy once that message is received.

*Id.* at 1184, (quoting *United States v. Maxwell*, 45 M.J. 406, 417 (C.A.A.F.1996)).

¶ 26 Because E.E. received the e-mail messages and could forward them to anyone, Appellant had no reasonable expectation of privacy in them. Accordingly, there was no violation of his constitutional rights.

¶ 27 Moreover, Appellant could not have a reasonable expectation of privacy in his chat-room communications. When Appellant engaged in chat-room conversations, he did not know to whom he was speaking. Oftentimes individuals engaging in chat-room conversations pretend to be someone other than who they are. Appellant could not have a reasonable expectation of privacy in engaging in chat-room conversations.

¶ 28 Accordingly, the court did not err in failing to suppress the electronic communications first received by E.E. on the grounds that they were obtained in violation of Appellant's constitutional rights.

### 2. *Communications received directly by Detective Morris*

¶ 29 Next, we will address those communications received directly by Detective Morris while using the moniker "Kelly15F" in the chatroom. First, we find that the Pennsylvania Wiretapping and Electronic Surveillance Act is not applicable to these communications. There was no "interception" in this case. Detective Morris, as "Kelly15F" was the intended recipient of these communications. This Court has held that where a party receives information from a communication as a result of being a direct party to the communication, there is no interception. In *Commonwealth v. Smith*, 186 Pa.Super. 89, 140 A.2d 347 (1958), this Court was presented with a situation in which after initiating a raid, officers answered incoming telephone calls. This testimony was admitted to establish that the Defendants were guilty of bookmaking and pool selling. *Id.* at 349. Defendants contended

that the Wiretapping Act was applicable to the case. This Court held the Act did not apply. *Id.* at 350. The police action did not constitute an interception within the meaning of the Act because the conversations between the callers and the police officers were direct and the callers elected to talk to the officers who answered the phone. *Id.*

¶ 30 This court also held, in *Commonwealth v. DiSilvio*, 232 Pa.Super. 386, 335 A.2d 785 (1975), that in a scenario similar to that in *Smith,* the receipt of information was not an interception under the Act. Rather,

> [t]he callers freely elected to talk to the officers, whether or not they were informed of the identity and occupation of the recipients of the calls. By receiving the communication directly over the means of transmission employed, the officers were in fact themselves parties to the call.

*Id.* at 787.

¶ 31 In this case, Detective Morris was a direct party to the communications from Appellant. There was no eavesdropping or wiretapping. Detective Morris obtained the information because he was a party to the communication. The fact that Detective Morris did not identify himself as a police officer is of no effect. *See Commonwealth v. DiSilvio*, 232 Pa.Super. 386, 335 A.2d 785 (1975). The Wiretapping Act is not intended to prevent a telephone user from misrepresenting his or her identity. *Id.* Appellant freely elected to talk to Detective Morris, regardless of whether he was informed of "Kelly15F" 's true identity. Therefore the communications received by Detective Morris should not be suppressed on the grounds that the means of obtaining this information was in violation of the Act.

¶ 32 Furthermore, we hold that there was no violation of Appellant's constitutional rights. Appellant had no reasonable expectation of privacy in his e-mails or chat-room communications. Courts that have addressed this issue have found that an individual possesses a limited reasonable expectation of privacy in e-mail messages. *See United States v. Charbonneau,* 979 F.Supp. 1177 (S.D.Ohio 1997); *United States v. Maxwell,* 45 M.J. 406, 417 (C.A.A.F.1996). The District Court for Southern Ohio has held: "When an individual sends or mails letters, messages, or other information on the computer, that Fourth Amendment expectation of privacy diminishes incrementally." *Charbonneau,* at 1184. The Court went further in stating: "Furthermore, the openness of the "chat room" diminishes Defendant's reasonable expectation of privacy." *Id.*

¶ 33 We agree with this reasoning. When Appellant engaged in chat-room conversations, he had no way of verifying to whom he was speaking. When Appellant engaged in chat room conversations, he ran the risk of speaking to an undercover agent. *See United States v. Charbonneau,* at 1185. Appellant does not have a reasonable expectation of privacy in the chat rooms. Accordingly, there was no violation of the Appellant's state or federal constitutional rights in allowing these communications to be admitted as evidence.

**Whether there was sufficient evidence to find Appellant guilty of offenses beyond a reasonable doubt.**

¶ 34 Appellant's final contention is that the trial court erred in finding that the evidence was sufficient as a matter of law to support his convictions.

¶ 35 Appellant challenges the legal sufficiency of the evidence. When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences

deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Vesel*, 751 A.2d 676, 681–682 (Pa.Super.2000), *appeal denied*, 563 Pa. 686, 760 A.2d 854 (2000). In making this determination, we must evaluate the entire trial record and consider all the evidence actually received. *Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 673 A.2d 962, 965 (1996). It is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial. *Commonwealth v. Molinaro*, 429 Pa.Super. 29, 631 A.2d 1040, 1042 (1993).

¶ 36 Appellant was convicted of criminal solicitation, obscene and other sexual materials and performances, and corruption of minors.

¶ 37 The material elements of Criminal Solicitation are set forth at 18 Pa.C.S.A. § 902(a). Section 902(a) provides:

§ 902. Criminal solicitation

(a) Definition of solicitation.—A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

18 Pa.C.S.A. § 902(a).

¶ 38 Although Appellant contends that the evidence presented at trial was not sufficient as a matter of law to convict him, he makes only general allegations regarding his conviction for criminal solicitation.

Because these allegations are made in a boilerplate fashion, we need not address them. We note, however, that the evidence of record supports the finding of the trial court that Appellant was guilty of this crime, beyond a reasonable doubt.

¶ 39 Appellant was also convicted of three counts of obscene and other sexual materials and performances.[5] The material elements of the crime of obscene and other sexual materials and performances are identified at 18 Pa.C.S.A. § 5903. The relevant provisions are as follows:

§ 5903. Obscene and other sexual materials and performances.

(a) Offenses defined.—No person, knowing the obscene character of the materials or performances involved, shall:

\* \* \*

(3) design, copy, draw, photograph, print, utter, publish or in any manner manufacture or prepare any obscene materials;

\* \* \*

(5) produce, present or direct any obscene performance or participate in a portion thereof that is obscene or that contributes to its obscenity;

\* \* \*

(c) Dissemination to minors.—No person shall knowingly disseminate by sale, loan or otherwise explicit sexual materials to a minor. "Explicit sexual materials," as used in this subsection, means materials which are obscene or:

(1) any picture, photograph, drawing, sculpture, motion picture film, video tape or similar visual representation or image of a person or portion of the

---

**5.** Appellant was charged with and convicted of violations of 18 P.S. 5903(a)(3), (a)(5), and

(c)(1).

human body which depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors;
. . .

* * *

18 Pa.C.S.A. § 5903.

¶ 40 Appellant contends that the evidence at trial did not support his conviction for these offenses because the evidence presented "... did not establish that Mr. Proetto sold, loaned, or otherwise exhibited or possessed any obscene material as defined by the statute." Appellant's Brief at 27. Appellant further contends that "[t]he photo of Mr. Proetto is not per se obscene as per the statute,...." Appellant's Brief at 28. In summary, Appellant contends:

The Commonwealth never established the required element that Mr. Proetto knowingly disseminated visual representations or images of a person or portion of the human body which depicts nudity, sexual conduct, or sadomasochistic abuse, and which is harmful to minors.

Id. at 29.

¶ 41 In order to determine whether there was sufficient evidence to convict Appellant, we must review the evidence presented at trial. Relevant to these charges are the pictures. These trial exhibits, however, are not included in the certified record.

¶ 42 Our Supreme Court has held that "for the purpose of appeal, it is the responsibility of the Appellant to offer a complete record for our review." *Commonwealth v. Feflie*, 398 Pa.Super. 622, 581 A.2d 636, 640 (1993). It is a well settled principle that appellate courts may only consider facts which have been duly certified in the record on appeal. *Murphy v. Murphy*, 410 Pa.Super. 146, 599 A.2d 647, 652 (1991). Where a claim is dependent upon materials not provided in the certified record, that claim is considered waived. *Commonwealth v. Lassen*, 442 Pa.Super. 298, 659 A.2d 999, 1008 (1995).

¶ 43 In the case *sub judice*, the Appellant has failed to provide the necessary documentation for review. Because our review of the issue is dependent upon materials that are not provided in the certified record, we cannot consider this claim. Thus, this claim is waived.

¶ 44 Appellant was also convicted of corruption of minors, which is defined in relevant part as:

§ 6301. Corruption of minors

(a) Offense defined.—

(1) Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1).

¶ 45 Appellant asserts that the Commonwealth failed to establish his guilt of this offense because "[n]o evidence was presented beyond a reasonable doubt sufficient to sustain a conviction, that Mr. Proetto aided, enticed, abetted, or encouraged the Complainant to commit a crime." Appellant's Brief at 29.

¶ 46 Appellant was over 18 years of age, and E.E. was less than 18 years of age, at all times relevant to this matter. By his conduct, Appellant acted to corrupt E.E.'s morals. Appellant requested that E.E. prepare a tape of herself for him and encouraged E.E. to engage in a sexual relationship with him. Upon review of the

record we find that there is sufficient evidence to convict Appellant of this offense.

¶ 47 Judgment of sentence affirmed.