J-S79009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWIN DAVIS | |
| Appellant | No. 3194 EDA 2015 |

Appeal from the Judgment of Sentence September 18, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005487-2013

BEFORE: GANTMAN, P.J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED NOVEMBER 02, 2016**

Appellant, Edwin Davis, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following Appellant's convictions of one count each of third-degree murder, conspiracy to commit murder, firearms not to be carried without a license, and possession of a firearm prohibited.[1] We affirm.

The trial court opinion fully sets forth the relevant facts and procedural history of this case. Therefore, we have no need to restate them.[2]

---

[1] 18 Pa.C.S.A. §§ 2502(c), 903(c), 6106(a)(1), and 6105(a)(1), respectively.

[2] We observe the local courts were closed from September 22, 2015, until September 29, 2015, for the Papal visit to Philadelphia. Therefore, the post-sentence motion Appellant filed on September 29, 2015, was timely.

Appellant raises the following issue for our review:

> WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN [APPELLANT]'S CONVICTION[S] SINCE THE COMMONWEALTH'S EVIDENCE WAS SO FRAUGHT WITH INCONSISTENCIES AMONG THE COMMONWEALTH WITNESSES, THAT A VERDICT BASED UPON IT WAS INHERENTLY UNRELIABLE AND COULD AMOUNT TO NO MORE THAN SURMISE OR CONJECTURE?

(Appellant's Brief at 3).

With respect to a sufficiency claim:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

After a thorough review of the record, the briefs of the parties, the

applicable law, and the well-reasoned opinion of the Honorable Barbara A. McDermott, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed January 15, 2016, at 7-11) (finding: Appellant communicated with cohort, his brother, less than one hour before shooting; Appellant met on day in question with his brother and another individual, who, Appellant observed, cleaned and prepared firearms; while armed, Appellant and several others went to confront intended victim at apartment, where Appellant heard TV and voices inside, and kicked apartment door several times; knowing apartment was occupied, Appellant and his brother fired several shots into apartment through door and walls, fatally wounding victim; Appellant acted recklessly and demonstrated extreme indifference to human life; sufficient evidence supported third-degree murder and conspiracy convictions; one of Appellant's cohorts testified Appellant concealed firearm before he walked to scene; two cohorts of Appellant testified that Appellant fired through apartment door with previously concealed weapon; Commonwealth offered certificate of non-licensure into evidence; sufficient evidence supported carrying firearms without license conviction; additionally, Appellant stipulated he was previously convicted of offense that prohibits him from possessing firearm; sufficient evidence supported possession of firearm prohibited conviction). The record supports the trial court's reasoning. Accordingly, we affirm on

the basis of the trial court opinion.[3]

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/2/2016

_____

[3] The trial court opinion also addresses Appellant's challenge to the discretionary aspects of the sentence. Appellant does not raise that issue on appeal, however, so we give it no attention.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

**FILED**

JAN 1 5 2016

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH OF PENNSYLVANIA  :  CP-51-CR-0005487-2013

                          :

         v.                :

                          :  CP-51 CR-0005487-2013 Comm. v. Davis, Edwin
                                      Opinion

EDWIN DAVIS              :

                          :  7394332611

## OPINION

**McDermott, J.**                                              **January 15, 2016**

### Procedural History

In February 2013, the Defendant, Edwin Davis, along with co-defendants Evan Davis, Paul White, and Michelle White, was arrested and charged with Murder and related offenses. On December 23, 2013, co-defendant Michelle White appeared before the Honorable Benjamin Lerner and entered into an open guilty plea to Third-Degree Murder and Conspiracy.[1]

On June 29, 2015, the Defendant, Evan Davis, and Paul White appeared before this Court and elected to be tried by a jury. On July 2, 2015, the jury found the Defendant guilty of Third-Degree Murder, Conspiracy, and Firearms Not to be Carried Without a License. That same day, at a bifurcated trial, the Defendant waived his right to a jury and this Court found the Defendant guilty of Possession of a Firearm Prohibited.[2]

Sentencing was deferred for completion of pre-sentence and mental health reports. On September 18, 2015, this Court sentenced the Defendant to twenty to forty years of imprisonment for

---

[1] Sentencing in Michelle White's matter, CP-51-CR-005484-2013, has been deferred until adjudication of co-defendant Evan Davis' matter in CP-51-CR-0005486-2013.
[2] The jury returned a not-guilty verdict as to Carrying a Firearm on a Public Street in Philadelphia. The remaining charges were *nolle prossed.*

Third-Degree Murder, a consecutive term of five to ten years for Possession of a Firearm Prohibited, and concurrent terms of ten to twenty years for Conspiracy and three to six years for Firearms Not to be Carried Without a License, for a total sentence of twenty-five to fifty years of imprisonment.

On September 29, 2015, the Defendant filed a Post-Sentence Motion for Reconsideration of Sentence. On October 13, 2015, this Court denied this motion. On October 21, 2015, the Defendant filed a timely Notice of Appeal. On October 23, this Court ordered the Defendant to submit a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

On November 6, 2015, trial counsel James A. Lammendola, Esquire filed a Petition for Extension of Time to File a Response. On November 23, this Court ordered trial counsel to submit a timely 1925(b) Statement by November 30, 2015. On November 30, 2015, trial counsel failed to submit at timely 1925(b) Statement, and filed a second Petition for Extension of Time.

On December 15, 2015, this Court removed James A. Lammendola, Esquire as counsel, appointed James F. Berardinelli, Esquire, and ordered the defendant to submit a 1925(b) Statement through new counsel. On January 11, 2016, the Defendant filed a timely 1925(b) Statement.

**Facts**

Between 5:00 and 6:00 p.m. on February 6, 2013, co-defendant Michelle White and her housemate Marlieta Cowan, left their home at 5427 Walker Street and walked two to three blocks to the apartment complex at 5728 Cottage Street, where co-defendant Paul White, Michelle White's father, lived. From outside the apartment complex, Michelle White and Cowan observed a verbal altercation inside the complex's main hallway between Paul White, Omar Simmons, Tony Crawford, and Richard Boykin about an alleged $20 debt. The argument quickly turned physical and spilled outside, where Simmons and Paul White exchanged punches. N.T. 6/29/2015 at 233–239, 244; N.T. 6/30/2015 at 69–76, 95–97.

2

Cowan and Michelle White separated Simmons and Paul White, breaking up the fight. Michelle White then approached Simmons and shouted, "If you want to fight, I can call my brother and you could fight one of my brothers," referring to her brothers-in-law, the Defendant Edwin Davis and co-defendant Evan Davis.[3] Incensed, Michelle and Paul White argued with Simmons, Crawford, and Boykin, whereupon Michelle White reiterated that she could call her brothers to fight Simmons. N.T. 6/29/2015 at 242–247; N.T. 6/30/2015 at 75–76.

After the argument ended, Simmons returned to 5728 Walker Street and entered apartment B3, where Krystal Evans and the victim Khiry Harris lived. Evans, Simmons, and the victim smoked marijuana and fell asleep inside the apartment. N.T. 6/29/2015 at 82–84, 92, 97, 107.

At a nearby grocery store, Michelle White unsuccessfully attempted to contact the Defendant and Evan Davis via phone. At this time, Paul White stated that the Defendant and Evan Davis "need to come," and "they need to handle this." N.T. 6/29/2015 at 248–250; N.T. 6/30/2015 at 76–77. Michelle White, Paul White, and Cowan walked to Paul White's apartment, where they encountered Paul White's neighbor Richard Boyle. Within Boyle and Cowan's presence, Paul and Michelle White discussed bringing Defendant and Evan Davis over to "take care of" Simmons and "handle" the situation. N.T. 6/29/2015 at 251–253; N.T. 6/30/2015 at 77; N.T. 7/1/2015 at 12.

Between 8 p.m. and 9 p.m., Cowan and Michelle White returned to 5427 Walker Street, where Michelle White spoke to Evan Davis on the phone. Although Michelle White was not struck during the altercation with Simmons, Crawford, and Boykin, she told Evan Davis that Simmons punched her. At approximately 9:13 p.m., Evan Davis and his friend "Hasan" arrived at 5427 Walker Street. Evan Davis and Hasan began cleaning two semi-automatic pistols, using rubber gloves and towels supplied by Michelle White. Shortly thereafter, the Defendant and an unidentified individual

---

[3] Michelle White is married to the Defendant and Evan Davis' older brother, Ernest Davis.

3

arrived at the home and watched Evan Davis and Hasan prepare the weapons. N.T. 6/29/2015 at 255–262; N.T. 6/30/2015 at 78–81, 98–99.

At approximately 9:50 p.m., the Defendant, armed with a concealed handgun, walked to Paul White's apartment, accompanied by Evan Davis, Michelle White, Hasan, and the unidentified individual. Upon their arrival, Paul White told the Defendant that Simmons was in the victim's apartment and directed him to Boyle's apartment. At Boyle's apartment, Paul White asked Boyle to knock on the door of apartment B3. Boyle led the group to apartment B3 and knocked on the door, but received no response. N.T. 6/29/2015 at 263; N.T. 6/30/2015 at 82–84, 117, 120; N.T. 7/1/2015 at 12–15.

From outside the apartment door, Boyle heard a television and the sound of voices coming from inside the apartment. After several knocks, the Defendant and Evan Davis pushed Boyle away and began kicking the apartment door. Upon hearing an unidentified sound, the Defendant and Evan Davis drew their weapons and fired several shots into the apartment door and surrounding wall. N.T. 6/30/2015 at 84–85; N.T. 7/1/2015 at 15–16, 18.

Inside the apartment, Krystal Evans woke to the sound of gunfire and observed Simmons break a window and attempt to escape. Evans quickly discovered the victim on the floor near the apartment's bathroom, convulsing and struggling to breathe. Evans immediately checked the victim, observed two profusely-bleeding gunshot wounds, and called 911. N.T. 6/29/2015 at 84–87.

At 9:58 p.m., Officers Philip Lanz and Mark Swierczynski received a radio call for a person shot at 5728 Cottage Street. At 10:00 p.m., the officers arrived at the scene, observed four bullet holes in the apartment's entryway door, and discovered the victim inside, lying in a pool of blood. After securing the scene, the officers escorted Simmons and Evans to homicide for questioning. N.T. 6/29/2015 at 50–57, 61.

4

At 10:10 p.m., medics arrived and pronounced the victim dead at the scene. At trial, Deputy Medical Examiner Dr. Albert Chu, an expert in forensic pathology, testified that the victim suffered from a perforating gunshot wound and a penetrating gunshot wound that entered the victim's central chest and the victim's lower abdomen, respectively. The perforating gunshot wound's projectile travelled through the victim's right lung, heart, and liver, exiting his left back. The penetrating gunshot wound's projectile travelled through the victim's colon and was recovered from the victim's right pelvis. Each gunshot wound was fatal. N.T. 6/29/2015 at 55, 199–208.

Immediately after the shooting, the Defendant, Evan Davis, Michelle White, Hasan, and the unidentified individual returned to 5427 Walker Street. As Michelle White returned, Cowan observed that she "looked like she was a ghost," and otherwise seemed distraught. Michelle White told Cowan that the Defendant and Evan Davis "lit up the place." N.T. 6/29/2015 at 263–265.

At 11:15 p.m., Officer Robert Flade of the Philadelphia Crime Scene unit arrived at 5728 Cottage Street. In the hallway, Officer Flade discovered three .380 caliber and five .9mm caliber fired cartridge casings ("FCCs"). Inside the apartment, Officer Flade discovered twelve strike marks, inserted probes to determine the direction of travel, and recovered two projectiles. At trial, Officer Flade testified that the trajectory of the bullets was consistent with shots fired in the apartment hallway from two different guns located at two different angles respective to the apartment door. N.T. 6/29/2015 at 127–150, 166.

After an investigation, firearms expert Officer Raymond Andruczak determined, to a reasonable degree of scientific certainty, that two of the .380 caliber FCCs and five of the .9mm caliber FCCs were fired from the same .380 caliber and .9mm caliber semi-automatic pistol, respectively.[4] N.T. 6/29/2015 at 152–162.

---

[4] Officer Andruczak's analysis of a .380 cal. FCC was inconclusive as to whether it was fired from the same weapon as the others.

On February 7, 2013, in an interview with Detective Gregory Singleton, Michelle White admitted her involvement in the shooting and identified the Defendant and Evan Davis as the shooters. On that same date, Detectives Griffin and Spotwood interviewed Boyle, who also identified the Defendant and Evan Davis as the shooters. N.T. 6/30/2015 at 85, 89; N.T. 7/1/2015 at 16–19.

On February 8, 2013, Officer Mark Jerden arrested the Defendant and recovered his black and grey cell phone, numbered (267) 897-7551. Detectives did not retrieve the associated cell phone records. N.T. 7/1/2015 at 80–81; *see also* Commonwealth Exhibit C-118.

Officer Daniel Williams arrested Evan Davis on February 8, 2013. After the arrest, Detective Singleton recovered Evan Davis' cell phone and executed a valid search warrant to obtain the phone's records. Special Agent William Shute of the Federal Bureau of Investigation, an expert in historical cell cite analysis, analyzed the phone records and discovered that the phone associated with Evan Davis called the phone associated with the Defendant three times between 9:05 p.m. and 9:13 p.m. on the night of the murder. By cross-referencing the phone records with historical cell site data, Agent Shute determined that between 9:05 to 9:13 p.m., the phone associated with Evan Davis travelled towards 5427 Walker Street, and that at the time of the murder, the cell phone was in the general vicinity of 5728 Cottage Street. N.T. 7/1/2015 at 79–82, 104–116.

On December 23, 2013, Michelle White pled guilty to Third-Degree Murder and Conspiracy for the death of Khiry Harris. As part of her plea, Michelle White agreed to testify truthfully against the Defendant and his co-conspirators in exchange for consideration at sentencing. N.T. 6/29/2015 at 23; Commonwealth Exhibit C-100.

On July 2, 2015, in a trial held immediately after the jury had rendered its verdict, the Defendant stipulated that he had been previously convicted of two enumerated offenses under 18 Pa.C.S. § 6105. N.T. 7/2/2015 at 100.

**Discussion**

The Defendant raises two issues on appeal. The Defendant claims that the evidence was insufficient to sustain the verdict and this Court imposed an excessive sentence.

## Sufficiency of Evidence

The Defendant challenges each of his convictions on the basis of inconsistent and unreliable testimony. Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences drawn therefrom support the jury's finding of all the elements of an offense beyond a reasonable doubt. *Commonwealth v. Mattison*, 82 A.3d 386, 392 (Pa. 2013) (*citing Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008)). In applying this standard, Pennsylvania courts acknowledge that "the Commonwealth may sustain its burden by means of wholly circumstantial evidence." *Montalvo*, 956 A.2d at 932 (*citing Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008)). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, as any doubts regarding a defendant's guilt may be resolved by the fact finder unless the evidence is so inconclusive that, as a matter of law, no probability of guilt may be drawn. *Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa. Super. 2011) (*quoting Commonwealth v. Jones*, 874 A.2d 108, 120–121 (Pa. Super. 2005)). The fact finder is free to believe all, part, or none of the evidence. *Id.*

Murder in the Third Degree is any unlawful killing committed with malice, but without the specific intent to kill nor committed in the commission of a felonious act. 18 Pa.C.S. § 2502(c); *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super 2011); *see also Commonwealth v. Santos*, 876 A.2d 360, 363–364 (2005). Malice aforethought may be established by showing a defendant's particular ill-will, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, characterizing an extreme indifference to human life. *Commonwealth*

7

*v. Santos*, 876 A.2d 360, 363–364 (Pa. 2005) (*citing Commonwealth v. Ludwig*, 874 A.2d 623, 631–632 (Pa. 2005); *Commonwealth v. Taylor*, 337 A.2d 545, 548 (Pa. 1975)). Malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Thomas*, 54 A.3d 332, 335–336 (Pa. 2012).

In the instant case, multiple eyewitnesses testified that the Defendant rendezvoused with Evan Davis at 5427 Walker Street, where he observed Evan Davis and Hasan prepare firearms. Shortly thereafter, the Defendant carried a weapon to 5728 Cottage Street in order to confront Simmons. At apartment B3, the Defendant heard a television and voices from inside the apartment, and kicked the door several times. The Defendant fired several shots into the door and the surrounding walls despite knowing that the apartment was occupied. N.T. 6/30/2015 at 84–85; N.T. 7/1/2015 at 21, 45. By repeatedly firing a weapon into a knowingly occupied apartment, the Defendant acted recklessly to the consequences of his conduct and demonstrated an extreme indifference to the value of human life. The fatal wounds to vital parts of the victim's body—the middle chest and lower abdomen—further infer the Defendant's malice. N.T. 6/29/2015 at 204–208. This evidence is sufficient to support the Defendant's Third-Degree Murder conviction.

To sustain a conviction for Criminal Conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. McCall*, 911 A.2d 992, 996 (Pa. Super. 2006) (*citing Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000)). An explicit or formal agreement to commit crimes can seldom, if ever, be proved, but a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators

8

sufficiently prove the formation of a criminal confederation. *Commonwealth v. Perez*, 931 A.2d 703, 708–709 (Pa. Super. 2007); *Commonwealth v. Jones*, 874 A.2d 108, 121–122 (Pa. Super. 2005).

The Superior Court has identified four factors to be considered in determining the sufficiency of the evidence supporting the existence of a conspiracy: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002).

The Defendant communicated with the co-conspirator Evan Davis less than one hour before the shooting. N.T. 7/1/2015 at 104–105. The Defendant travelled to the meet location, 5427 Walker Street, and observed Evan Davis cleaning and preparing firearms. N.T. 6/29/2015 at 261–262. The Defendant and several co-conspirators walked to Paul White's residence to confront Simmons, and kicked the victim's apartment door in furtherance of that purpose. *Id.* at 262–263; N.T. 6/30/2015 at 82–84. While under the impression that someone was at the apartment door, the Defendant and Evan Davis both drew guns and simultaneously fired into the victim's apartment. *Id.* at 84–85; N.T. 7/1/2015 at 17–18. These facts, taken in order, establish association, knowledge, presence, and participation, respectively. The evidence is therefore sufficient to support the Defendant's Conspiracy conviction.

In order to convict a defendant of Carrying a Firearm Without a License, the Commonwealth must prove beyond a reasonable doubt that (1) the weapon was a firearm; (2) the firearm was unlicensed; and (3) the firearm was concealed on or about the defendant's person, outside his home or place of business. *Commonwealth v. Coto*, 932 A.2d 933, 939 (Pa. Super. 2007) (*citing Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004)); 18 Pa.C.S. § 6106(a)(1).

Concealment is an issue determined by the trier of fact, based on the particular circumstances in each case. *Commonwealth v. Scott*, 436 A.2d 607, 608 (Pa. 1981) (citation omitted).

In *Commonwealth v. Scott*, the appellant shot the decedent on a public street. Two Commonwealth witnesses testified that they saw the appellant pull something resembling a firearm from his waistband. Appellant claimed that he approached the victim gun in hand. Appellant argued that since the Commonwealth offered no proof of concealment, the evidence was insufficient to support his conviction. In rejecting the appellant's contention, the Supreme Court held that the Commonwealth witness' testimony was sufficient to sustain the jury's conclusion that the appellant had concealed his weapon. *Id.* at 608–609.

The instant case presents similar circumstances to those found in *Scott*. At trial, Michelle White testified that the Defendant concealed the firearm sometime before he walked to the victim's apartment. N.T. 6/30/2015 at 117, 120. Michelle White and Boyle both testified that the Defendant drew his previously unseen weapon and fired through the victim's door. *Id.* at 84–85; N.T. 7/1/2015 at 15–16, 21. At the conclusion of testimony, the Commonwealth offered a Certificate of Non-Licensure into evidence. N.T. 7/1/2015 at 128; *see* Commonwealth Exhibit C-123. The Defendant did not challenge the certificate's admissibility. These facts are sufficient to sustain the Commonwealth's burden of proof.

To sustain a conviction for Possession of a Firearm Prohibited, the Commonwealth must prove that a defendant possessed a firearm and was previously convicted of an offense enumerated in 18 Pa.C.S. § 6105(b). *Commonwealth v. Williams*, 911 A.2d 548, 550–551 (Pa. Super. 2006). Possession may be proved entirely through circumstantial evidence. *Commonwealth v. Buford*, 101 A.3d 1182, 1189–1190 (Pa. Super. 2014).

10

Under the Superior Court's holding in *Commonwealth v. Antidormi*, 84 A.3d 736 (Pa. Super. 2014), a co-defendant's testimony is sufficient to prove possession. In *Antidormi*, the appellant fired one shot into a private residence while joyriding, and no firearms were recovered incident to his arrest. At trial, a co-defendant testified that the appellant possessed a shotgun at the time of the shooting. The Superior Court found the single co-defendant's testimony sufficient to sustain the appellant's conviction, on the grounds that the jury was free to believe or disbelieve the co-defendant's testimony. *Id.* at 743–757.

This case presents far stronger evidence of possession than what the Superior Court sustained in *Antidormi*. Two Commonwealth witnesses, Michelle White and Boyle, offered non-contradicted testimony that the Defendant possessed a pistol and fired it into the victim's apartment. N.T. 6/30/2015 at 84–85; N.T. 7/1/2015 at 15–16, 21. In a bifurcated hearing, the Defendant stipulated that he had been previously convicted of an enumerated offense under 18 Pa.C.S. § 6105(b). N.T. 7/2/2015 at 99–100. This evidence is sufficient to sustain the Defendant's conviction.

## Reconsideration of Sentence

The Defendant challenges the discretionary aspects of aggregated sentence total sentence. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa. Super. 2012) (*citing Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002)). An abuse of discretion is more than just an error in judgement, and the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will. *Commonwealth v. Clarke*, 70 A.3d 1281, 1287 (Pa. Super. 2013) (citation omitted). "A sentencing court generally has discretion to impose multiple sentences concurrently or consecutively, and a challenge to the exercise

11

of that discretion does not ordinarily raise a substantial question." *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 784–785 (Pa. Super. 2015) (*quoting Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014)).

To prevail, a defendant must raise a "substantial question" by articulating clear reasons why the sentence issued "compromises the sentencing scheme as a whole." *Dunphy*, 20 A.3d at 1222 (Pa. Super. 2011) (*citing Commonwealth v. Dalberto*, 648 A.2d 16, 22 (Pa. Super. 1994)). An appellant bears the burden of showing that the actions by the sentencing court were "inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Titus*, 816 A.2d 251, 255 (Pa. Super. 2003). Ordinarily, a claim that a sentencing court failed to accord proper weight to a specific sentencing factor does not raise a substantial question. *Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015).

The Defendant avers that this Court failed to consider the defendants character in imposing a manifestly excessive sentence. This Court reviewed the Defendant's pre-sentence and mental health reports prior to sentencing. Prior to his arrest in this matter, the Defendant had five convictions—including Possession of an Instrument of Crime, Harassment, and drug charges—four probation violations, and two revocations, for a prior record score of four. N.T. 9/18/2015 at 3–4. This crime violated the terms of the Defendant's supervision under the Honorable Alfred DiBona and the Honorable Holly Ford. *Id.* at 4. Although the Defendant earned his high school diploma and was employed at the time of the murder, the Defendant incurred three disciplinary infractions in prison since his arrest, including a fifteen day segregation for controlled substance/alcohol abuse in May 2014 and a seven day cell lockdown in March 2015. *Id.* at 16–21.

At sentencing, this Court heard testimony from the Defendant's father, sister, and his middle school dean, who all informed this Court that the Defendant was a good father and devout Christian.

*Id.* at 6–16, 22–28. The Defendant addressed this Court and apologized to the victim's family while maintaining his innocence. *Id.* at 33–37. The Court considered each of these factors, as well as the contents of the presentence and mental health reports, before imposing the sentence. *Id.* at 36–39.

The offense gravity score for Third-Degree Murder is fourteen and the standard range period of minimum confinement is fourteen years to twenty years. The offense gravity score for Possession of a Firearm Prohibited is ten and the standard range period of minimum confinement is four to five years. This Court imposed consecutive standard range sentences of twenty to forty years and five to ten years for Third-Degree Murder and Possession of a Firearm Prohibited, respectively, for an aggregate sentence of twenty-five to fifty years imprisonment. Because the Defendant willfully escalated events leading to the victim's murder and has continued to engage in troubling behavior post-incarceration, the Defendant poses a substantial risk to society. The Defendant fails to demonstrate that this Court neglected to consider mitigating factors or otherwise acted inconsistent with the Sentencing Code. The protection of the Commonwealth's citizens calls for no less than the sentence imposed.

For the foregoing reasons, the decision of this Court should be affirmed.

BY THE COURT,

Barbara McDermott

Barbara A. McDermott, J.

13